(No. 30911.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL QUIDD, Plaintiff in Error.

*Opinion filed March 24, 1949.*

Maximilian J. St. George, of Chicago, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, W. S. Miroslawski, Arthur F. Manning, and Clement D. Cody, all of Chicago, of counsel,) for the People.

Mr. Justice Crampton delivered the opinion of the court:

Plaintiff in error, hereinafter called defendant, was indicted in the criminal court of Cook County for the crime of larceny by embezzlement. He was tried on two counts of the indictment, the offense charged in each relating to the same transaction. The first count charged embezzlement by a public officer or his agent or servant, and the second count charged embezzlement as agent. Upon a trial by a jury he was found guilty upon both counts, and the value of the property stolen was stated to be $495. After overruling motions for a new trial and in arrest of judgment the court sentenced him to the penitentiary

for not less than three nor more than six years on each count. He has sued out this writ of error to review the record, assigning as error an insufficiency of evidence, prejudicial remarks of the State's Attorney in his argument to the jury, the giving and refusing of certain instructions, and the sentencing on two counts, each of which related to the same offense.

The evidence on behalf of the prosecution disclosed that during the time in question defendant was employed as senior clerk in the psychopathic division of the Cook County hospital. A branch of the county court is held in the same building three times a week, for the purpose of adjudicating questions of insanity. When a patient is brought into the hospital his clothing and whatever valuables he has on his person are taken by an attendant, who places the money, jewelry or other small articles into an envelope and seals it with scotch tape. A list of its contents is made on the envelope, which is then signed by the attendant, the nurse on duty and the person who brought the patient to the hospital. The envelope is thereafter brought to the clerk at the office, who copies the entry on the envelope into a book known as the "Property Book," under the patient's name and number, and places the envelope in the vault. If the patient is thereafter committed to an institution his property is turned over to a custodian of property designated by the Department of Public Welfare, who transfers it to the institution to which the patient is committed. In addition to defendant, a junior clerk, the warden and the doctor in charge knew the combination of the vault and had keys to the inside door thereof.

On January 29, 1947, one Mary Domino was brought to the hospital by her son, Edward Domino. Part of her her property consisted of $495.09 in cash. The nurse took the money, counted it in the presence of the son and the attendant, placed it in an envelope and sealed it with gummed tape. The envelope was then signed by the nurse,

the attendant and the son, and was delivered by the nurse to defendant at his office.

On February 4, Mary Domino was adjudged insane and ordered to an insane asylum. Her husband, James Domino, and her son Edward who had been in the courtroom during the hearing, went out into the corridor, where they were engaged in conversation by defendant. He told them that if Mrs. Domino's money were sent to the insane asylum with her it would likely be used for purposes not to her advantage and never be seen again, and suggested that it be left under his care in the vault. The husband and son assented, and inquired as to when they could get it back. To this defendant did not give a definite answer but replied "that all depends." The husband and son then left the hospital.

On or about May 26 an auditor, upon making an examination of the contents of the vault, discovered the envelope and found it contained only nine cents. None of the money had been turned over to the representative of the Department of Public Welfare. Upon the envelope there appeared a notation in defendant's handwriting: "Opened for son 2-4-47—P. Quidd." The son testified that he did not ask or authorize defendant to open the envelope and extract any money therefrom. In the property book a purported notation of receipt appeared as follows: "216940 number. NAME Mary Domino. Env. with cash $495.09. 1 pr. glasses, 1 green set ring, 1 band ring, 1 meat roast thermometer. Yellow Pocket knife 3 keys, 1 pr. tweezers, blk. purse. John Domino." This entry, except for the names Mary Domino and John Domino, was in defendant's handwriting. The father and son each testified he did not write the name John Domino in the property book and did not receive the money.

The evidence for defendant consisted of the testimony of his son and six other witnesses, who testified to defendant's reputation for being an honest and law-abiding citizen.

He introduced no evidence controverting the material facts established by the prosecution.

Defendant contends that the record does not present any satisfactory proof of a felonious and fraudulent conversion, and that the mere failure to account for the money received is insufficient to support a conviction for embezzlement. The testimony clearly indicates, without dispute, that the envelope containing the money was turned over to defendant, that while in his possession its seal was broken and the money removed, and that upon subsequent examination of the vault by the auditor the money was missing. In addition, it is not denied that defendant persuaded Mrs. Domino's husband and son to allow the money to remain in his possession; that the son did not authorize defendant to open the envelope for him as indicated by defendant's notation thereon; and that the entry in the property book, purporting to show that the money and other articles had been delivered to one John Domino, was in defendant's handwriting. The testimony relating to those facts is not impeached or contradicted in any way. It is a general rule that positive testimony of credible witnesses, uncontradicted and unimpeached, cannot be disregarded but must control the decision of a court or jury. (*People* v. *Rasof*, 363 Ill. 431). The facts thus shown do not indicate a mere failure to account for money received but amply warrant the inference that defendant wilfully converted the money to his own use.

Defendant complains that the court erred in giving and refusing certain instructions. The instructions in question are not set forth in his brief, and it does not appear that defendant objected to the court's action in either giving or refusing instructions. We have heretofore held that under such circumstances the propriety of such action will not be considered. (*People* v. *Silvia*, 389 Ill. 346.) However, an examination of the given instructions complained of shows that they are free from serious objection, and a

perusal of each refused instruction discloses either that it incorrectly states the law or that its subject matter had already been included in given instructions.

It is insisted that the State's Attorney made improper argument to the jury by the following statements: "It is one thing for a man to go out on the street and strong-arm me and take a chance, at least he possibly has a combat with me when he is trying to take my money; at least he meets an intelligent, a sane person, but, what do you think of the kind of a defendant that preys on the poor unfortunate in whom the flickering light of reason is dwindling until she is sent to a State institution." Defendant's objection to these remarks was overruled. Complaint is also made of the following observations in the State's Attorney's argument, to which no objection was interposed in the trial court: "You have before you the positive testimony which I say in this case, and as Mr. Blattberg has said, is uncontradicted and undenied, and it is for you, as the jury, to protect the rights of people like Mary Domino and those other poor unfortunates that may be in her situation." The remarks to which defendant objects are within the scope of permissible argument. Whatever is proved by direct evidence or is fairly inferable from facts and circumstances proved and which has a bearing upon the issue may be a fair subject for comment by counsel, and if such deductions or inferences tend to fix upon the defendant the crime charged against him, it is within the scope of proper and fair argument to denounce him accordingly. (*People* v. *Blume*, 345 Ill. 524, 536.) There was no prejudicial error in overruling defendant's objection.

It is finally urged that the court, in sentencing defendant on each of two counts relating to the same transaction, committed reversible error. The contention cannot prevail. Where there are two counts in an indictment growing out of the same transaction, the effect of two verdicts is the

same as a finding that the defendant is guilty as charged in the indictment. Whether there is one general verdict or two separate verdicts is of no consequence. The sentences were not imposed to run consecutively. They necessarily run concurrently, as both offenses are but one transaction, and defendant was not prejudiced thereby. *People* v. *Novotny*, 371 Ill. 58; *People* v. *Fitzgerald*, 297 Ill. 264.

We have considered the other contentions of defendant and find them to be without merit. There is no prejudicial error in the record, and the judgment of the criminal court of Cook County is accordingly affirmed.

*Judgment affirmed.*