People of the State of Illinois, Plaintiff-Appellee, v. Rufus Vail, Defendant-Appellant.

Gen. No. 49,754.

First District, Third Division.

August 12, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Chester P. Majewski and Frederick F. Cohn, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick Murphy, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Rufus Vail was indicted for the crime of rape, waived a jury trial, was convicted and was sentenced to from ten to twenty-five years in the penitentiary.

He contends on appeal that he was not proved guilty beyond a reasonable doubt in that the complainant's testimony was unbelievable and contradictory and that she was contradicted by police officers, while the defendant's testimony was reasonable and corroborated.

The complaining witness testified that on a warm summer night, June 30, 1963, at approximately 1:00 a. m., she was returning home from a local restaurant. As she approached the gangway leading to her house a man came up behind her and put what she thought was a knife to her neck and put a hand across her shoulders. He

"marched" her through the gangway and warned her not to scream or he would kill her. He walked her to the alley and into a nearby yard.

In the back yard he made her take off all her clothes. He then forced her to lie on her stomach while he had rectal intercourse with her. He then made her submit to vaginal intercourse. He broke off branches from a tree and beat her on the lower back and buttocks; he said: "If you scream, I will kill you."

He said: "Well, I got another idea" and he had her dress and forced her to accompany him down an alley to his second floor apartment two blocks away. As they went he brandished the knife and admonished her to keep quiet and not to try to get away. In his room he again made her remove her clothes and he again forced her to submit to rectal intercourse. While she was lying on her stomach he tied her hands and feet together in back of her with an electric cord, gagged her and left. In about 15 minutes he returned with a quart of beer. He untied her and beat her nude body with the electric cord. He offered her beer but she refused it; he drank it on and off. At one time he had an iron pipe in his hand and he warned her not to scream, saying: "If you do, I'll kill you right here now."

She pleaded with him to let her go; he refused and attempted to have oral intercourse with her. She successfully resisted. He eventually fell asleep and she slipped away at approximately 5:40 a. m., put her clothes on outside, ran home and called the police.

When the police arrived she told them what had happened and led them to the defendant's apartment where they found him asleep on a cot. The prosecutrix identified him and related what had taken place. He denied the acts of violence but admitted having intercourse with her and said he paid her $2.

In his testimony Vail repeated what he told the police. He also testified that he had been drinking that evening and that he had left a bowling alley between 11:15 and

310

11:30. He said he met the complaining witness on the corner and struck up a conversation concerning drinking and asked if he could accommodate her in that regard. They went to his apartment and he left to get some beer. He returned with a quart and then inquired about having "relations with her and she said yes." They began to have sexual relations but he lost interest and "never finished." He said she asked for money and that he gave her $2. He added: "It was just a gift. I just gave her $2.00 for nothing."

He then lay down and she sat on the edge of the bed drinking beer and talking about different things. He feigned sleep; she shook him but he did not say anything. She then got up, got her purse, the remaining beer and left. He denied beating her up or going in back alleys or yards with her.

The contention that the complaining witness' testimony is unbelievable is based upon (1) her failure to make an outcry, (2) the improbability of not being seen on a warm night when other people might have been about and (3) on the fact that she claimed that her will to resist normal intercourse was overcome but that she was able to resist oral copulation. The prosecutrix' failure to make an outcry is understandable. The defendant held a knife to her throat when he first seized her and held it to her lips as they walked to his apartment; there he menaced her with an iron pipe; he repeatedly threatened to kill her and disclosed, by the depravity of his acts and his cruelty in beating her, his capacity for carrying out his threats. Her not being seen or not seeing anyone is not inherently improbable even though the night was warm and the neighborhood residential. She was in a gangway, a back yard and alleys and entered the defendant's residence from the rear—he lived on the second floor in a rear room. If anyone saw her it was unknown to her and not disclosed by the police. That she submitted to rectal intercourse and normal intercourse

311

but refused to submit to oral copulation does not make her testimony as to the former acts unbelievable. The State's explanations that her refusal was "undoubtedly a last ditch effort not to be debased any further" and that the defendant was "probably physically exhausted" are not unreasonable. The oral act was attempted after the defendant drank the beer and just before he fell asleep.

The contradictions in the prosecuting witness' testimony and between her testimony and that of the arresting officers were negligible. We have examined the record and find that she was thoroughly and sharply cross-examined and that her recital of the facts remained remarkably consistent.

Much is made of that fact that the record does not show what happened to the bottle of beer. The defendant said that when she departed she took the bottle with her. The arresting officers testified as to certain items found in the defendant's room but said nothing about the beer bottle. However, neither side inquired about the bottle. If the record is devoid of testimony concerning it, and it is, the fault lies with the defense as much as with the prosecution.

The defendant's testimony was corroborated in part by a friend, Jerry Clark. Clark testified that he saw Vail and the prosecuting witness on the night in question laughing and conversing together. Clark said they went into the building in front of which he was sitting in a car. He saw them go upstairs and that about five minutes later Vail came down; Vail went across the street and five or ten minutes later came back with a package and went upstairs again. A few minutes later the lady came down and walked away.

However, the prosecuting witness' testimony was also corroborated. She made an immediate complaint of the crime. The police responded to her summons 20 minutes after she left the defendant's apartment. In his apart-

ment the arresting officers found the electric cords which had been used to tie her up and with which she was beaten. They also found the iron bar with which the prosecuting witness said Vail threatened to kill her if she cried out. They saw her body bruises and saw welts from the middle of her back to the calves of her legs. They went to the yard where she said she had been raped and there observed matted-down grass and small branches recently broken off the trees. They found a key in the grass which she had lost and which she told them about when they first questioned her.

■■■■ In the final analysis this case comes down to the credibility of the witnesses. The defendant's testimony was supported by Clark's testimony but his own credibility was attacked by the introduction of his criminal record. In 1959 the defendant pleaded guilty to an indictment for rape and was sentenced to nine years in the penitentiary. The complaining witness' testimony was corroborated by the testimony of the officers and their observation of physical facts which substantiated her testimony. The trial judge chose to believe her testimony and the officers' and he was justified in doing so. In a nonjury trial it is the duty of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony, and unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of the defendant's guilt, the finding of the court will not be disturbed. People v. Reaves, 24 Ill2d 380, 183 NE2d 169 (1962).

The defendant was proved guilty beyond a reasonable doubt and the judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.