**People of the State of Illinois, Plaintiff-Appellee, v. Eddie B. Boyd (Impleaded), Defendant-Appellant.**

**Gen. No. 52,371.**

First District, Second Division.

February 4, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Saul H. Brauner, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Count I of the indictment against Eddie Boyd, defendant, charged him with the offense of attempt to commit robbery, and Count II with the offense of aggravated battery. The case was tried before a jury; defendant was found guilty on both counts of the indictment, and sentenced to one to five years in the penitentiary on each

count, the sentences to run concurrently. In this court the defendant contends he was not proved guilty beyond a reasonable doubt, and that it is error to convict a defendant of two crimes arising out of the same transaction.

On December 31, 1966, John O'Dea, complaining witness, and Eddie Boyd, the defendant (accompanied by Leon Davis) were passengers on an elevated train. There is no question that a fight took place in the car in which the three were seated. The question to be determined by the trier of fact was the series of events leading up to the fight.

O'Dea testified that he had left his home at about 2:00 a. m., and had gone to a tavern at 75th and Exchange, where he had two beers; that after about 20 minutes he took a bus to 63rd and Stony Island and boarded the elevated train at about 4:00 a. m., on his way to visit a friend. The defendant and Davis were sitting across the aisle from O'Dea and began making remarks to him, which he ignored. The defendant crossed the aisle and asked O'Dea to give him a dime. When he replied that he didn't have a dime the defendant told him he had better give it to him or he would take all his money from him. When O'Dea continued to ignore him, the defendant returned to Davis, and after a conversation, both men crossed the aisle to O'Dea, demanding all of his money and threatening to take it. When he refused, the two young men started beating the 57-year-old O'Dea, calling him an indecent name and saying, "Kill the ———— ————." They continued beating him, banging his head against the window until the window was shattered and he was knocked insensible. He suffered multiple lacerations about the face, several cuts on the head, dentures broken beyond repair, lacerations inside his mouth, and two black eyes.

C. T. A. Police Officer Frank Kretz testified that he and his partner, James Crossin, were at the Cermak Road

"L" Station waiting for a train. As it pulled in he noticed that one of the windows was broken and that there was a fight going on in the train. He saw one man holding the complaining witness by the back of the neck and punching him while another man stood in front of the complaining witness and punched him with both hands. Officer Kretz entered one door and his partner the other; Officer Kretz saw the defendant and Davis flee into the next car. The two officers went to O'Dea who was bleeding profusely about the face; the three then went to the car ahead where O'Dea pointed out the defendant and Davis as the men who had attacked him. Officer Kretz also pointed out the defendant in court. He further testified that the defendant had damp blood on both hands and that he wore three rings on each hand.

Officer James Crossin testified that as the train was pulling into the station he and his partner, Officer Kretz, saw the defendant and Davis beating a man whom he now knows as John O'Dea, the complaining witness. They entered the car and saw the defendant running into the next car. After checking the condition of the victim, the two officers and O'Dea went to the other car where O'Dea pointed out the defendant and Davis. Officer Crossin further testified that when he was waiting on the platform he saw the defendant standing in front of O'Dea, striking him about the face and head, and that O'Dea seemed almost unconscious at the time. He stated that he noticed fresh blood on the defendant's hands and added that the lighting conditions in the car were very good. He and his partner then arrested the defendant.

The defendant testified in his own behalf as follows. He was a short-order cook in a restaurant, and on the night in question had worked from 8:00 p. m. to 4:00 a. m., after which he went to Cottage Grove "L" Station with Leon Davis; they were going to a party on the west side. They sat across the aisle from O'Dea who "was very intoxicated and he was down between the seat."

348

The defendant picked him up and put him on the seat, after which O'Dea started talking to him, asking if he knew where there were any colored girls. The defendant said he would rather not listen to his conversation, and O'Dea started to "cuss" him and called him "nigger." He still refused to talk to O'Dea and O'Dea slapped him. Davis restrained the defendant from slapping O'Dea, but when O'Dea hit him again the defendant hit him back and they started fighting. He testified that he had only one ring on his right hand. The defendant further stated that he and Davis then went into the other car, after which the police officers came in and arrested them both, handcuffed them and started beating and kicking them. He stated that later, when they were taken to the police station, one of the officers put a gun to Davis' head and said he ought to be killed. The defendant denied he had asked O'Dea for any money.

In rebuttal Officer Kretz testified that he had not kicked or beaten the defendant on the occasion of his arrest, and that he had not seen anyone put a gun to defendant's head and threaten to kill him. He stated that in his opinion O'Dea was not intoxicated on the morning in question. Officer Crisson also testified in rebuttal that no one struck or beat the defendant at any time or threatened to kill him. He also stated that it was his opinion that O'Dea was not intoxicated.

■■ The question for the trier of fact was which witnesses were telling the truth. The jury believed the testimony of O'Dea, the complaining witness, and the officers, which they had a right to do. It has been repeatedly held—so often that it requires no citation of authority—that where the evidence is conflicting and cannot be reconciled, it is the duty of the trier of fact—whether judge or jury—to determine the credibility of the witnesses and the weight given their testimony; and a reviewing court cannot substitute its judgment for that of the jury or the trial court, nor can it disturb a verdict

of guilty on the ground that the evidence is not sufficient to convict, unless it is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify the court in entertaining a reasonable doubt of defendant's guilt. People v. Tensley, 3 Ill2d 615, 122 NE2d 155. The testimony of the State's witnesses in the instant case does not fall within that classification. The evidence was sufficient to convict the defendant beyond a reasonable doubt.

The defendant makes the further argument that since the robbery attempt and aggravated battery were a result of the same transaction it was error to convict him of both crimes.

This question has been before the Illinois courts several times. In People v. Quidd, 403 Ill 15, 85 NE2d 179, the defendant was indicted for the crime of larceny by embezzlement; he was tried on two counts of the indictment, the offense charged in each relating to the same transaction. The first count charged embezzlement by a public officer, and the second charged embezzlement as agent. On trial the defendant was found guilty upon both counts, and the court sentenced him to the penitentiary for the same term on each count. The court held that there was no error in the trial court's sentencing defendant on each of two counts relating to the same transaction, and said at page 20:

> "Where there are two counts in an indictment growing out of the same transaction, the effect of two verdicts is the same as a finding that the defendant is guilty as charged in the indictment. . . . The sentences were not imposed to run consecutively. They necessarily run concurrently, as both offenses are but one transaction, and defendant was not prejudiced thereby."

In People v. Stingley, 414 Ill 398, 111 NE2d 548, an indictment in two counts was returned against the de-

350

fendant. The first count charged an assault with intent to rape, and the second count charged an assault with intent to murder. Both arose out of the single series of acts committed upon the same victim at the same time and place. The court found the defendant guilty on both counts and sentenced him to a term of 10 to 14 years on each count, the sentences to be served "cumulatively." The defendant contended that the trial court was without authority to impose two consecutive sentences under a single two-count indictment naming offenses in the same transaction. The Supreme Court took the view that the case raised a question of first impression in Illinois, and cited People v. Quidd, supra, holding that when sentences are imposed to run consecutively the defendant is necessarily prejudiced. The court said at page 404:

> "We think the People, when they elect to prosecute two separate felonies under two counts in the same indictment, are entitled to only one satisfaction. . . .
>
> "It is our holding, therefore, that the sentences of plaintiff in error on the two counts of the indictment are being served concurrently and that the satisfaction of one will satisfy both. [Citing case.] The judgment of the Criminal Court of Cook County is affirmed."

In People v. Schlenger, 13 Ill2d 63, 147 NE2d 316, the defendant pleaded guilty to an indictment in two counts, the first charging armed robbery, and the second grand larceny. He was sentenced to the penitentiary for a term of 5 to 15 years on the armed robbery count, and sentenced 5 to 10 years on the grand larceny charge, to run concurrently with the first sentence. The court cited People v. McMullen, 400 Ill 253, 79 NE2d 470, which held that where two verdicts were returned and two sentences imposed in a case charging burglary and larceny, since the two sentences must run concurrently, the

351

defendant is not prejudiced. However, in Schlenger, the court held that where the trial court imposed sentences for different periods on each count of the indictment involving the same transaction, the fact that the sentences were to run concurrently is not controlling because under those circumstances the defendant's application for parole may be adversely affected by the second sentence. The court reversed the judgment on the charge of grand larceny contained in the second count of the indictment and affirmed the burglary judgment.

In People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299, cited by the defendant, an indictment in two counts was returned against the defendant; one charging forcible rape, and the other incest. The two offenses involved a single act—the defendant's forcible rape of his 10-year old daughter. The court held that it was proper to join the two charges in a single indictment and try them together since they were both based upon the same occurrence. On the count of forcible rape the defendant was sentenced to the penitentiary for a term of five years; on the incest count the sentence was imprisonment for not less than 19, nor more than 20 years, and the judgment provided that the two sentences should run concurrently. The court pointed out that force and lack of consent are essential elements of rape, but not of incest, and that the relationship between the parties was an essential element of incest, but not of rape. The court said, "The common denominator is the element of unlawful carnal knowledge." The court discussed People v. Stingley, supra, which had held that although consecutive sentences had been imposed they were being served concurrently, and that the satisfaction of one would satisfy both. The court cited People v. Schlenger, supra, stating that in Stingley it was sufficient to hold that the satisfaction of one sentence would satisfy both, while in Schlenger, where different sentences were imposed to run concurrently, the court affirmed judgment for the

greater offense, but set aside the other. In Duszkewycz, the court held that only one sentence should have been imposed, and that it should have been for the greater offense. The court affirmed the judgment of the criminal court upon the count of the indictment charging rape, and reversed its judgment upon the count charging incest.

In People v. Ritchie, 66 Ill App2d 302, 213 NE2d 651, the defendant was charged in a two-count indictment with rape and burglary with intent to commit rape. The trial court imposed a sentence of 15 years to life as to each count of the indictment, the sentences to run concurrently. In the opinion the court cited and discussed People v. McMullen, 400 Ill 253, 79 NE2d 470; People v. Stingley, 414 Ill 398, 111 NE2d 548; People v. Schlenger, 13 Ill2d 63, 147 NE2d 316; and People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299. Also cited was People v. Squires, 27 Ill2d 518, 190 NE2d 361, in which case it was held that where the defendant was charged with both burglary and larceny in a two-count indictment and the larceny charge was the taking of the same merchandise as that taken from the burglarized store, and the defendant was found guilty on each count and sentences were imposed to run consecutively in each count, the larceny sentence was erroneous and was reversed.

In Ritchie the court also cited the Criminal Code of 1961 (Ill Rev Stats 1963, c 38, § 1–7(m)), as follows:

"When a person shall have been convicted of 2 or more offenses which did not result from the same conduct, either before or after sentence has been pronounced upon him for either, the court in its discretion may order that the term of imprisonment upon any one of the convictions may commence at the expiration of the term of imprisonment upon any other of the offenses."

353

The Committee which prepared the draft of the Criminal Code adopted by the legislature has said in its comments:

> "Subsection (m) is intended to codify the holding in People v. Schlenger, 13 Ill2d 63, 147 NE2d 316 (1958), by the implicit converse of the provision stated, i. e., if the offenses resulted from the same conduct the defendant may not be sentenced on both, either concurrently or consecutively. 'Conduct' is defined in section 2–4 and is used in the sense of 'the same transaction' discussed in Schlenger, supra."

The court further stated at page 314:

> "The indictment in this case includes a count charging rape and a count charging burglary with intent to commit rape. We must conclude that upon the record of this case such counts were presented to and considered by the court as a part of the same conduct or transaction, and that, under the cited decisions and the subsequent statutory enactment, the concurrent sentences imposed are not authorized by law."

The court affirmed the judgment for rape and reversed the judgment for burglary.

In a supplemental opinion on denial of petition for rehearing, the Ritchie court cited and quoted from People v. Golson, 32 Ill2d 398, 207 NE2d 68, in which case the court said at page 412:

> "To determine, as a matter of legal semantics, that two indictable offenses were committed does not make these multiple trials fair, or vary the fact that defendants were guilty of only one punishable course of conduct."

The court adhered to its former decision.

In People v. Ritchie, 36 Ill2d 392, 222 NE2d 479, the Supreme Court affirmed the decision of the Appellate Court, and said at page 397:

> "The sense of the opinion appears to be that since the two crimes charged, i. e., rape and burglary with intent to commit rape, arose out of the same conduct or transaction and against the same person it would be unfair and prejudicial to defendant to impose two sentences and therefore it reversed the burglary conviction, relying on People v. Golson, 32 Ill2d 398; People v. Squires, 27 Ill2d 518; and People v. Schlenger, 13 Ill2d 63; and section 1–7 (m) of the Criminal Code. Ill Rev Stats 1965, chap 38, par 1–7 (m)."

However, see People v. Raby, 40 Ill2d 392, 240 NE2d 595.

In People v. Peery, 81 Ill App2d 372, 225 NE2d 730, the defendant was convicted of attempted murder and aggravated battery. For each crime he was sentenced to the penitentiary for a term of not less than five nor more than ten years, the sentences to run concurrently. In that case the court said, at page 377:

> "Defendant was convicted of attempted murder and of aggravated battery, both of which arose from the same conduct. Though this contention was not raised on appeal, under People v. Schlenger, 13 Ill 2d 63, 147 NE2d 316, concurrent sentences for crimes arising from the same conduct are improper and the conviction of the lesser crime must be reversed. (See also People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299.) Therefore the conviction of attempted murder is affirmed and the conviction of aggravated battery is reversed."

■■ In the case before us, the attempted robbery and the aggravated battery were a part of the same transaction. The defendant demanded complainant's

money and threatened to take it, then commenced beating him. Under the rule laid down by the decisions, the judgment of the Circuit Court charging aggravated battery is reversed. The judgment finding the defendant guilty of attempt to commit robbery is affirmed.

Reversed in part, affirmed in part.

LYONS, P. J. and BURKE, J., concur.