THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN W. SMITH, Defendant-Appellant.

(No. 55804;

First District—November 22, 1972.

*Supplemental opinion upon denial of rehearing December 19, 1972.*

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty and Suzanne M. Kohut, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen Connolly, Assistant State's Attorneys, of counsel,) for the People.

## SUPPLEMENTAL OPINION UPON
## DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Three men carrying concealed weapons entered a tavern on Chicago's southeast side about 11:15 P.M., September 15, 1968. There were 15 or 20 patrons in the tavern, many of them steelmill employees who had finished work at 11:00 P.M. and were cashing their paychecks. One of the men drifted into a back room where the proprietor of the tavern, Theodore Superczynski, had gone, as was his practice, to cash a customer's check. This man drew a gun and pistol-whipped Superczynski in an effort to find his cache of money. The owner screamed and a second gunman, who was standing behind the patrons, immediately ordered them to the rear. They were herded against a wall where they stood with their hands raised. The third robber began searching through boxes in the area. The beating of Superczynski continued until several hundred dollars were taken from him. Minutes later one of the gunmen cried, "Let's get out of here."

Two of the robbers left just as police officers rushed into the tavern. The officers turned on the lights, which one of the robbers had turned off, found the huddled patrons in a back room and told them to keep their hands up while a search was conducted. The stolen money and a

gun were found on Donald Smith, the robber who had beaten the owner. Descriptions were obtained of his companions.

A second robber, the defendant John Smith, a brother of Donald, was arrested five blocks away. He was seen and identified by three patrons who were being driven to the police station to have their statements taken.

The Smiths were indicted for armed robbery and aggravated battery, tried by a jury and found guilty of both counts. John Smith, who prosecutes this appeal, was sentenced to the penitentiary for concurrent terms of 8 to 15 years. He contends that he was not proven guilty beyond a reasonable doubt because his identification was insufficient and his accountability for the crimes was not established. He also contends that his sentence was excessive.

Four patrons testified for the State. James Larry said that the defendant, who was bareheaded and wearing a white T-shirt, brandished a gun and ordered everyone to the rear of the tavern. Collis Tucker testified that as he jumped from the bar when Superczynski screamed for help, he was struck by the defendant and ordered into the rear. Stonewall Mc-Cuiston said he saw the defendant search through some boxes. James Shelby testified that the defendant had a gun in his hand and struck Superczynski.

The defendant admitted being in the tavern but denied participating in the robbery. He said he was a customer who witnessed the robbery and opened the door for the policeman. When the first arrest was made he recognized his brother and decided it best to leave. His testimony about being a customer was buttressed by Jonnia Dirkans, a patron who testified that the defendant was seated at the bar two or three places from him. When the robbery was announced Dirkans was hit on the side of the head; he did not observe the person who hit him but was quite sure that the defendant was in front of him when the patrons were forced to the rear.

■■ The defendant's claim that his identification was deficient is erroneously grounded on misinterpretations of the evidence. The identification was not influenced by his presence in the tavern as a patron; it was not based upon his wearing a white shirt, and it was not suggested by a police officer while the patrons were being taken to the police station. Four witnesses testified the defendant was one of the robbers; all saw him with a gun. His conduct and his gun set him apart from the other patrons. The descriptions of the witnesses were not limited to his wearing a white shirt; his other appearel and physical characteristics were also described. During the ride to the station, one witness told the policeman

he saw one of the gunmen crossing a vacant lot. The policeman asked, "Is that one of the hold-up men?" The witness said it was. The officer asked if he was positive, and he and the other occupants of the car said they were. The officer ordered the defendant to halt but he opened a gate, ran through a yard, jumped a fence and ran between two buildings before he was captured. He had no gun. When asked what he had done with it he answered, "Well, I didn't have any. If I'd have had a gun, you [the policeman] wouldn't be standing here." The defendant's identification was not tainted by the officer asking, "Is that one of the hold-up men?" A witness, not the policeman, initiated the identification. The officer's questions were directed to the confirmation of the identification before he made an arrest; he did not stop or pursue the defendant because of suspicion or independent information. See *People v. Harris* (1968), 92 Ill.App.2d 412, 236 N.E.2d 281.

■■ The defendant asserts that his explanation for being in the tavern and his account of what transpired is "infinitely more plausible than the amalgam offered by the prosecution or that of any of its witnesses." The jury thought otherwise and the overwhelming weight of the evidence sustains its verdict. There was only one major discrepancy in the testimony of the four eyewitnesses. James Shelby said he saw the defendant strike Superczynski. The other three and Superczynski said he did not. Even if the jury thought that Shelby was mistaken in this particular, the evidence—including the defendant's attempt to escape and the discovery of his abandoned auto which was parked near the tavern—was sufficient to prove his participation in the robbery beyond a reasonable doubt.

■■ He was also accountable for the aggravated battery committed on Superczynski during the course of the hold-up. (Ill. Rev. Stat. 1967, ch. 38, pars. 5—1, 5—2 (c).) The three men who entered the tavern acted in concert to accomplish the robbery. The defendant's affirmative acts were done in furtherance of that crime. When two or more persons have a common design to accomplish an unlawful purpose, the act of one is the act of all and all are equally guilty of whatever crime is committed. (*People v. Nowak* (1970), 45 Ill.2d 158, 258 N.E.2d 313; *People v. Valentine* (1965), 60 Ill.App.2d 339, 208 N.E.2d 595.) The jury was justified under the evidence and the law in finding the defendant guilty of aggravated battery.

■■ However, the sentence imposed for this offense was defective in two respects. First, the statutory penalty for aggravated battery is limited to a maximum sentence of ten years. (Ill. Rev. Stat. 1967, ch. 38, par. 12—4 (a).) The defendant was sentenced to the penitentiary for a period of 8 to 15 years. Thus, the sentence for aggravated battery is excessive.

Second, there is no evidence in the record which suggests that the conduct which constituted the offense of aggravated battery was separate from the conduct which constituted the offense of armed robbery. Only one sentence can be imposed when different offenses arise from the same act. (*People v. Randolph* (1972), 4 Ill.App.3d 277, 280 N.E.2d 774; *People v. Boyd* (1969), 105 Ill.App.2d 345, 245 N.E.2d 587.) The sentence for aggravated battery, therefore, must be set aside.

●■■ The 8 to 15-year sentence imposed for the offense of armed robbery is within the statutory penalty which requires an indeterminate term with a minimum of two years. (Ill. Rev. Stat. 1967, ch. 38, par. 18—2(b).) Even though the defendant was 63 years old at the time of the trial, the circumstances of this case and his criminal record do not merit a reduction of his sentence. The tavern owner, who was much older than the defendant, was severely beaten during the robbery. The defendant's prior convictions, armed robbery in 1927, robbery in 1930 and receiving stolen property in 1952, although long past, were properly considered in aggravation and mitigation.

The judgment of conviction and sentence for armed robbery are affirmed. The judgment for aggravated battery is modified and the sentence vacated.

Affirmed as modified.

McGLOON, P. J., and McNAMARA, J., concur.