THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE TRIPP, Defendant-Appellant.

(Nos. 57711, 57712 cons.;

First District (3rd Division)—April 18, 1974.

Paul Bradley, Deputy Defender, of Chicago (Gordon Berry and Clint Batterton, Assistant Appellate Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Larry A. Sultan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court.

Willie Tripp was tried by the court and found guilty of battery and attempted theft. He was sentenced to serve 6 months for the former offense and 1 year for the latter, the sentences to run concurrently.

His first contention is that his guilt was not established beyond a reasonable doubt. Specifically, he attacks the identification evidence as insufficient to convict and asserts that the prosecution failed to prove that he either demanded or attempted to remove money or property from the complainant.

The complainant, John Scrobacz, and two eyewitnesses to the occurrence, Felicitad Aroyo and Romunaldo Sanchez, testified at the trial. Scrobacz stated that while returning home around 8:30 on the evening of November 11, 1971, he was set upon by two men who punched and stabbed him repeatedly. He called for help and his cries were heard by Romunaldo Sanchez, who was in his home one door away from the place of attack. He looked out from a first-floor window and saw two men "stomping" a third. One assailant, whom Sanchez identified as Willie Tripp, held a knife and demanded Scrobacz's money, while the victim shouted for help. Sanchez said he had a clear view of both men, but he was unable to describe the second one.

Felicitad Aroyo also saw the attack, which occurred beneath a street light approximately 30 feet away from her. She testified that she saw Tripp whom she recognized, having seen him about the neighborhood, stabbing Scrobacz while another unidentified assailant was kicking him, and she screamed at them to leave him alone.

A scant 24 hours after the attack, Sanchez and Miss Aroyo saw the defendant at a social gathering in a neighborhood church. Aided by a large number of those present, they held him until the police arrived.

Tripp denied the battery and attempted theft. He testified that the first time he saw Scrobacz was in the hospital the day after the attack and that he was at home at the time it took place. His alibi was unsubstantiated.

■■  Where the identification of an accused is at issue, the testimony of a single credible witness is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting positive identification. (*People v. Reed* (1968), 103 Ill. App.2d 342, 243 N.E.2d 628.) Here not one, but two eyewitnesses identified Tripp. Both saw him under a street light a short distance away; one had seen him before and recognized him, and both were able, independently, to single him out in a large crowd only a day after they witnessed the crime.

Scrobacz and Miss Aroyo experienced difficulty communicating their testimony because of language problems. Aroyo required an interpreter

and, at the suggestion of the defendant's counsel, an unnamed court bailiff was sworn to perform that function. Although the force of her testimony was somewhat blunted by her trouble in relating it, her identification was positive. Minor inconsistencies, arising from a language difficulty and not relating to the identification of a defendant, will not vitiate the value of such testimony. (*People v. Brinkley* (1965), 33 Ill.2d 403, 211 N.E.2d 730.) Sanchez had no language problem; his identification was also positive, and he further testified that the assault had been accompanied by demands for Scrobacz's money.

Scrobacz could not describe the assailants nor could he recall hearing what they said. No money or property was taken from him. The fact that he could not identify Tripp does not cast serious doubts on the accuracy or veracity of those who could. His testimony indicates that he may have panicked when attacked and that he may have been assaulted from the rear. In view of his outcries and the screams of Miss Aroyo, it is not surprising that the assailants abandoned their attack before consummating the theft.

When a case is tried without a jury it is the function of the trial judge to evaluate conflicting evidence, and his determination will not be reversed unless the reviewing court finds that the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. (*People v. Vail* (1966), 74 Ill.App.2d 308, 221 N.E.2d 165.) When witnesses labor under the handicap of language difficulties, an appellate court, which sees only the written record, should pay more than ordinary deference to the conclusions drawn by the trial judge, who observed demeanor and gestures of the witnesses and heard possibly important variables of inflection and emphasis. The finding of the judge that the defendant was guilty beyond a reasonable doubt was fully supported by the evidence.

The defendant urges that multiple trial errors, combined with ineffective representation of counsel, deprived him of due process of law and that trying him as an adult instead of as a juvenile denied him equal protection of the law.

The trial errors complained of are: (1) interruptions of unsworn, unidentified persons prompting or offering to explain and translate the testimony of witnesses; (2) the failure to exclude witnesses from the courtroom while others testified, and (3) the reliance placed by the court on an unsworn witness at the hearing in aggravation and mitigation.

Although it appears that the trial proceedings amounted to something less than a model of legal decorum, the defendant can show no prejudice resulting from the trial's informal atmosphere. From the rec-

ord, we surmise that all persons interested in the trial gathered around the bench. There were extrajudicial interjections but these were usually excited attempts to explain irrelevant facts, or mere offers to translate. Neither of the two alleged "prompting" incidents can properly be so characterized. One involved a spectator's explanation of the direction in which Rockwell Street ran, information unrelated to the trial issues. In the other, a woman repeated part of the prosecutor's question when a witness' answer was unresponsive.

The exclusion of witnesses from the courtroom is an optional procedure requiring motion by counsel, which motion does not appear in this record. Additionally, it is impossible to ascertain with certainty whether witnesses were or were not excluded prior to taking the stand. Arguing that they were not, the defendant relies only on a passage in the record in which the witness Sanchez, asked if the other State's witness had been present at the scene of the crime, replied, "that woman." Since "that woman" was obviously Miss Aroyo, who had testified earlier, her presence during Sanchez' testimony could not have prejudiced the defendant.

■■ After finding the defendant guilty as charged, the trial judge proceeded immediately into matters of aggravation and mitigation. He heard first from an unsworn witness, the victim's wife, who testified about the medical bills incurred by him after the attack. This evidence did not prejudice the defendant, since there had been ample testimony to establish the viciousness of the assault.

Based upon the foregoing purported trial errors and other alleged mistakes and omissions of his counsel, the defendant charges that he was incompetently represented. Among the numerous alleged mistakes and omissions are the following: his counsel, although appointed just before the trial began, did not move for a continuance in order to adequately prepare; he did not participate in any pretrial conference; he withdrew, without explanation, a motion to suppress evidence; he permitted the defendant to waive a jury trial, which the defendant did unintelligently; he suggested that one of the court bailiffs be sworn to act as interpreter for a prosecution witness, without ascertaining the man's qualifications or seeing that he was identified for the record; he failed to object when the interpreter did not ask questions or give responses in the proper form, and he failed to call a material witness, the defendant's brother, whose testimony would have supported the defendant's alibi.

Many of these allegations are founded on little more than conjecture. It is pure conjecture to claim that the defense attorney did not have enough time to prepare for trial and that he did not participate in a

pretrial conference. The record suggests otherwise. The charges against Tripp were reduced from an attempt armed robbery to battery and attempted theft, and he then knowingly waived a jury to expedite the disposition of the lesser charges. The grounds for the motion to suppress do not appear in the record, hence the withdrawal of the motion cannot be summarily characterized as evidence of incompetence. Proposing a bailiff, an officer of the court, to act as interpreter, was not a dereliction of duty to the accused's interests, without some reason to believe that such a person would harbor bias toward the accused. That the bailiff was not an experienced interpreter, is readily seen. Instead of repeating the exact words of the interrogator's questions, he paraphrased them, and it seems that he also did this to the witness' answers. Not insisting that the interpreter phrase the questions and answers in the proper form does not indicate the defense attorney's incompetency, nor does the fact that he did not place the defendant's brother on the stand. There could have been sound reasons for not calling him as a witness and speculation as to the real one would be useless.

■■ Many of the asserted errors concerned matters of judgment, as to which trial counsel should be allowed generous leeway, since each decision may represent only a tactical maneuver in a more comprehensive strategy. Momentary advantage may be permitted to pass in order to achieve some other hoped-for benefit. An attorney's performance should not be measured by what appellate counsel, with hindsight, might estimate to have been the better course. *People v. Washington* (1968), 41 Ill.2d 16, 241 N.E.2d 425.

But even if the acts and omissions alleged by the defendant's appellate counsel were sufficient to establish his trial counsel's incompetence, this alone would not warrant a reversal of his conviction. For the defendant would have to establish that he was so substantially prejudiced by the incompetence that the outcome of the case would probably have been different. (*People v. Newell* (1971), 48 Ill.2d 382, 268 N.E.2d 17; *People v. Georgev* (1967), 38 Ill.2d 165, 230 N.E.2d 851.) This the defendant has not done.

At the time these offenses were committed, Tripp was between 17 and 18 years of age. He was prosecuted as an adult and he contends that this denied him equal protection of the law, because a female of the same age would have been prosecuted under the Juvenile Court Act. (Ill.Rev.Stat. 1969, ch. 37, par. 702-7.) This same issue was made in *People v. Pardo* (1970), 47 Ill.2d 420, 265 N.E.2d 656, and it was there held that section 702-7 of the Act did not, by its differential classification of persons 17 years old according to sex, violate the equal protection clauses of the Federal and State constitutions. However, encouraged by

the Illinois Constitution of 1970, affected defendants have resuscitated the issue and it has been urged anew in several recent appeals. But once again it has been laid to rest: *People v. McCalvin* (1973), 55 Ill.2d 161, 302 N.E.2d 342; *People v. Ellis* (1974), —— Ill.2d ——, —— N.E.2d —— (No. 45745).

■■■ The defendant's final contention is that his convictions for battery and attempt theft rested on the same conduct and therefore the battery conviction must be reversed. Only one sentence can be imposed when different offenses arise from the same act. (*People v. Smith* (1972), 8 Ill.App.3d 270, 290 N.E.2d 261.) Whether an act or series of acts are part of the same conduct depends on the circumstances of each case. The testimony showed that the defendant and his accomplice knocked their victim down, stabbed and pummeled him, and demanded his money. There was no clearly divisible conduct to separate the two offenses.

The judgment of conviction and the sentence for attempted theft are affirmed. The sentence for battery is vacated.

Affirmed in part; vacated in part.

McNAMARA, P. J., and McGLOON, J., concur.