THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS BROWDER *et al.*, Defendants-Appellants.

(No. 59159;

First District (4th Division)—June 26, 1974.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Marianne Jackson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Ricky Nolls, Ronald Williams, Robert Hinkle, Van Johnson, Calvin Fisher, Willie Johnson, and Thomas Browder were charged with the rape of Diane Cross and Rosemary Brown. Following a bench trial at which all except Williams were tried together, Browder and Hinkle were each found guilty of two counts of rape and sentenced to 5 to 15 years in the penitentiary. The other four were found not guilty. Browder and Hinkle instituted the present appeal, contending that the finding of not guilty with respect to the other defendants are irreconcilable with their own convictions and create a reasonable doubt as to their guilt, that there is no evidence that the alleged intercourse with the complainants was accomplished by force and against their will, and that the testimony of the complainants is insufficient to establish their guilt beyond a reasonable doubt.

We consider first whether the convictions of Browder and Hinkle are irreconcilable with the findings of not guilty as to the other four defendants. It is contended that the evidence against all six defendants was essentially the same, inasmuch as the two complainants, Diane Cross and Rosemary Brown, observed all six under similar conditions and positively identified all six both in and out of court. The defendants state that the only rational explanation of the trial court's findings is that it rejected the identification testimony of the complainants as to the four

men acquitted, but accepted it as to them. This, they argue, is contradictory and casts doubt upon their convictions. The trial court did not provide any explanation of its split findings, and indeed such would be helpful to this court. However, after a careful review of the record, it is our opinion that the findings are consistent and raise no doubt concerning the defendant's guilt.

The complainants testified that on April 20, 1972, at about 9:30 in the evening, they were walking down Pulaski Road near Monroe Street when they were grabbed by three men who threatened them with a pistol and took them to a vacant apartment at 4043 Monroe Street. A fourth man was waiting at the apartment when they arrived. They were taken to separate rooms, and each was forced to undress and engage in sexual intercourse with the abductors. Following the original four, other men came into the apartment and had intercourse with the complainants. As soon as one man had finished, another would take his place. In all, 15 or 16 men had intercourse with Rosemary Brown, and 10 or more had intercourse with Diane Cross. The two women were finally released about 4 o'clock the following morning. They stopped a passing police car and told the officers that they had been raped.

Rosemary Brown identified Browder and Hinkle from a book of photographs shown to her by the police. She also identified Willie Johnson from a police car as he stood on Pulaski Road. At a lineup held on April 21, she identified Willie Johnson, Browder and Hinkle. Diane Cross identified Browder and Hinkle at Rosemary Brown's house on April 21. She identified Ricky Nolls on the street while she was riding in a police car and picked Hinkle, Browder, and Nolls out of the lineup held on April 21. She also identified Van Johnson in the courtroom of Branch 43, located at 937 North Wood Street. Both women identified all of the defendants in court.

The complainants testified that the lighting conditions in the apartment were such that they could see their attackers clearly. No lights were on, but the window shades were up, and light came in from the streetlights outside. Rosemary Brown stated that she saw Calvin Fisher for a period of about 7 minutes. She was lying on the floor looking up at him, and someone else was on top of her. She saw Willie Johnson on three different occasions in the light coming in through the windows and also saw his face when he struck a match to light a cigarette. Hinkle was in the room with her for about half an hour and was on top of her for about 3 minutes. She had also seen him 2 or 3 months prior to the incident when he came to her house to teach her nephew to play the guitar. She got a clear look at Browder while he was sitting next to her. During this time he was shining a flashlight on her body and asking if

she ever wore her hair in a "natural". She had gone to school with Browder's sister and had seen him before on the street and in an automobile. She also talked with him for about 10 minutes after she and Diane were allowed to leave, by which time it was daylight.

Diane Cross testified that she first saw Ricky Nolls standing over her as she lay on her back in the bedroom. He had intercourse with her twice, during which she was able to observe him for about 20 minutes. She saw Hinkle for about 3 minutes while he was on top of her. Van Johnson was on top of her for 3 or 4 minutes. His face was approximately 6 inches from hers, and she looked at it while he was having intercourse with her. Browder had intercourse with her twice. On the first occasion she observed him for about 15 minutes prior to the act and 5 minutes during it. On the second occasion she observed him for about 3 minutes while he was on top of her.

The foregoing demonstrates that the evidence against Nolls, Fisher, Willie Johnson, and Van Johnson can be distinguished from that against Hinkle and Browder. They were each identified out of court by only one of the complainants. Neither of the complainants had ever seen any of the four prior to the incident, and their only opportunity to observe them was under the lighting conditions that prevailed in the vacant apartment and during repeated sexual assaults. In addition, Nolls, Fisher, and Willie Johnson offered alibi testimony. Under these circumstances it is entirely possible that the trial court considered the identifications of these defendants too vague and uncertain to produce an abiding conviction of their guilt. See *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232.

On the other hand, each of the victims made independent identifications of Hinkle and Browder both prior to and in the lineup. Rosemary Brown was acquainted with both and had seen each on prior occasions. Browder stood with the complainants outside the apartment building for about 10 minutes, during which they were able to see him in the daylight. Rosemary Brown also testified that Browder exclaimed, "Hey man, I know her", to the other occupants of the apartment after he had shined the flashlight on her. Thus the identifications of Hinkle and Browder were far more certain and positive than those of the other men and were bolstered by independent corroborating circumstances.

We have often said that in a trial without a jury, the trial court, which hears and observes the witnesses, is best suited to sift the evidence and determine questions of fact. (*People v. Boney* (1963), 28 Ill.2d 505, 192 N.E.2d 920; *People v. Means* (1963), 27 Ill.2d 11, 187 N.E.2d 679.) Where the truth lies in any debatable set of circumstances is a matter to be determined by the trier of fact, and it is not for this court to

substitute its opinion for that of the trial court. The judgment of the trial court will not be set aside by this court unless the proof is so unsatisfactory or implausible that it justifies a reasonable doubt of the defendant's guilt. *People v. Woods* (1963), 26 Ill.2d 582, 187 N.E.2d 692.

We cannot say that the proof as to Browder and Hinkle is so unsatisfactory that it raises a reasonable doubt of their guilt. As we have pointed out, the evidence against them was considerably more than that against the four men who were acquitted and is, in our opinion, sufficient to support the trial court's findings. Therefore, we will not disturb them. It is true that Browder offered an alibi; however, the principles stated above apply to this as well. The trial judge was in the best position to observe Browder while testifying and to disregard the alibi if he concluded that it was incredible.

■■ We have examined the cases of *People v. Ethridge* (1971), 131 Ill.App.2d 351, 268 N.E.2d 260; *People v. Griffin* (1967), 88 Ill.App.2d 28, 232 N.E.2d 216; and *People v. Patterson* (1972), 52 Ill.2d 421, 288 N.E.2d 403, cited to us by the defendants, and find them distinguishable from the present case. In each of them, the evidence against the defendant(s) that were acquitted was the same as or greater than the evidence against the person convicted. As we have stated, we do not find that to be true in the present case. For these reasons we conclude that the findings of the trial court are not inconsistent.

We consider next whether the State proved that the defendants had sexual intercourse by force and against the will of the complainants. The defendants take the position that there is no evidence that either of them was among the group that originally abducted Diane Cross and Rosemary Brown and that the two women themselves testified that neither defendant had any weapon or threatened them in any way. When the defendants entered the apartment, the complainants were completely undressed and did not scream or resist during intercourse. Based upon this they contend that, assuming *arguendo* that they did have intercourse with the complainants, the State failed to prove that they exerted the essential element of "force," either directly or through accountability, and hence failed to prove them guilty of rape. We find this argument unpersuasive.

■■ Where two or more persons have a common design to accomplish an unlawful purpose, the act of one is the act of all, and all are equally guilty of whatever crime is committed. (*People v. Nowak* (1970), 45 Ill.2d 158, 258 N.E.2d 313; *People v. Smith* (1972), 8 Ill.App.3d 270, 290 N.E.2d 261.) As stated in *People v. Hubbard* (1972), 4 Ill.App.3d 729, 281 N.E.2d 767, "proof of a common purpose need not be supported

by words of agreement or direct evidence, but can be drawn from circumstances surrounding the commission of an act by a group." (4 Ill. App.3d at 733, 281 N.E.2d at 770.) In the present case there was evidence that three men forced the complainants to a vacant apartment at gunpoint, where a fourth man was waiting. The only furniture in the apartment was a couch in the living room and mattresses in the kitchen and bedroom, and no lights were on. More than one of the men ordered the complainants not to look at his face. After the first four had intercourse with the complainants, other men, among them Hinkle and Browder, entered and did likewise.

■■ Upon this evidence, it would have been reasonable for the trial court to have found that it was the purpose of the group to rape the complainants. As observed by the State's attorney in her oral argument before this court, it is apparent from the circumstances surrounding the actions of the men present in the apartment that they did not invite the women there to attend a tea party. Hinkle and Browder as members of the group were responsible for the group's actions. We conclude, therefore, that, under the theory of accountability, the State proved the element of force with respect to Hinkle and Browder, and we so hold.

Finally we consider whether the defendants were proven guilty beyond a reasonable doubt. They contend that the succession of men coming into the apartment could have been under the impression, or been told, that there were two girls in the apartment "giving it away". They argue that nothing in the record concerning the conduct of the complainants or the other men in the apartment would belie that impression. They also bring up the possibility that at some point during the night the complainants decided to acquiesce in the events taking place in the apartment. They point out that neither of the women testified that she screamed for help at any time and that the State failed to prove that either suffered any bodily injury or torn clothing.

■■ Much of what we have said with respect to the contentions discussed previously applies here as well. As we have indicated, it is our opinion that the evidence is sufficient to support a finding that a gang of young men formed a common design to rape Diane Cross and Rosemary Brown and that Hinkle and Browder participated in the offense. That the complainants' clothes were not torn does not raise a reasonable doubt as to the defendants' guilt, for, as stated in *People v. Sims* (1972), 5 Ill. App.3d 727, 283 N.E.2d 906, "[t]here is no definite standard concerning the amount of force required to establish the offense of rape * * *. In weighing the evidence of force, it is proper to consider the disparity in size and strength of the parties and the place and conditions under which the act took place." (5 Ill.App.3d at 729, 283 N.E.2d at 908.) In the

present case two women were abducted at gunpoint by four men, held in a dark, vacant apartment, and assaulted sexually by 15 or 16 men. These circumstances alone are sufficient to establish the use of force.

■■ Nor do we consider it particularly significant that the complainants did not scream for help or attempt to resist. Enroute to the apartment, they were told that they would be killed if they were not quiet, and once inside it is likely that the circumstances led them to believe that to cry out or resist would be futile and perhaps even dangerous. It is well established that the victim of a rape need not resist where such would be futile and would endanger her life or where she is overcome by superior strength or paralyzed by fear. (*People v. Smith* (1965), 32 Ill.2d 88, 203 N.E.2d 879.) However, the complainants did stop a police car and report that they had been raped immediately upon being released. We are convinced, therefore, that the trial judge was correct in finding the defendants guilty of rape.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ADESKO, P. J., and JOHNSON, J., concur.