(Nos. 38268, 41053, cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM SMITH *et al.,* Plaintiffs in Error.

*Opinion filed November 22, 1968.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (RONALD P. KATZ and JAMES J. DOHERTY, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and ROBERT B. ROSEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendants, William Smith and Austin Carter, were indicted for the unlawful sale of narcotics drugs. After a bench trial in the circuit court of Cook County, they were found guilty and sentenced to the penitentiary for not less than 10 years nor more than 10 years and one day. On this review, they contend that they were not proved guilty beyond a reasonable doubt and allege certain violations of their constitutional rights.

On July 3, 1963, at approximately 1:00 A.M., James Henry, a confessed narcotics addict, met with officers Clemmie Paschal and Louis Washington of the Chicago Police Department in the vicinity of Madison and Leavitt streets. Henry, who was known to the officers as a narcotics addict and informer, was searched and then offered his services to procure narcotics. He was given twelve dollars in recorded currency and two quarters inscribed with Paschal's initials. He left the police officers and proceeded to a restaurant on the southeast corner of Madison and Leavitt. Upon entering the restaurant, Henry approached Carter who allegedly agreed to sell him narcotics.

Henry testified that he and Carter were joined by William Smith, the other defendant, and that the three of them left the restaurant and walked south on Leavitt to Monroe Street. At Monroe the three proceeded west to Oakley Boulevard. At this point in the evidence several contradictions appear. Henry testified that Smith left the group at the corner of Monroe and Oakley and rejoined them later on in front of a white house on Oakley near Madison. Paschal testified that he had observed the trio from his vantage point almost a block away. He stated, contrary to Henry, that Smith had left them, gone into a gangway and then rejoined Carter and Henry, who were waiting while the three were still on Monroe, and not on Oakley, as Henry testified.

Henry testified that Smith gave the narcotics to Carter, who in turn gave the narcotics to him. Henry further stated that after the transaction, he returned to the squad car and there met Paschal and Washington and gave them the narcotics. Paschal, however, testified that only he and Henry and not Washington were present at the car when Henry gave him the narcotics.

Some time after receiving the narcotics, Washington and Paschal entered a tavern at 22 West Madison and

placed both defendants under arrest. None of the previously recorded or marked money was on Smith's person. Paschal stated that he found two of the marked quarters on Carter. The previously marked currency was recovered from the cash box of the tavern. Carter denied the possession of the quarters, and both defendants denied that they were parties to the alleged sale of narcotics.

After the defendants were convicted and sentenced, Carter alone filed a post-conviction petition, and, after a hearing, the court denied the petition. The defendant Carter appeals from that judgment and the causes are consolidated here.

The defendants contend that the plaintiff failed to present sufficient evidence to prove them guilty beyond a reasonable doubt. They rely heavily upon the fact that Henry was a narcotics addict and that therefore his testimony as the prosecution's principal witness was inherently incredible and unworthy of belief as a matter of law. The fact that a witness is a narcotics addict has a bearing upon his credibility; however, it does not follow that his testimony must necessarily be disbelieved, especially when corroborated by other witnesses. (*People* v. *Hamby,* 6 Ill.2d 559.) Paschal was a witness to the transaction involved and his testimony substantially corroborated that of Henry in regard to the sale of the narcotics and the identity of the two defendants. There are conflicts in the testimony of Henry and Paschal, but the determination of such conflicts is a function of the trial court. (*People* v. *Wysocki,* 20 Ill.2d 62.) In our opinion, the evidence was sufficient to sustain the finding of the trial court.

Defendants argue that even if guilt beyond a reasonable doubt were established by the evidence, it was done in violation of their right to a fair trial. They allege that Paschal violated the trial court instruction "not to converse with your partner about this, or with Mr. Henry," and that he

also gave Henry his police report of the illegal sale and surrounding events to cure any conflict in their testimony.

There is evidence that Paschal entered a room in which the assistant State's Attorney was talking to Henry, but no words were exchanged between Henry and Paschal. Furthermore, it is not established that what Henry had in his hands while in the room was a police report. The assistant State's Attorney testified that he did not read the document, but had assumed it to be a police report. Regardless of the nature of the instrument, it is not established anywhere in the record that the document was given to Henry by Paschal.

Defense counsel propounded various questions to the informer concerning his residence, income, expenses, prior employment as a special employee of the police, amounts of money spent on narcotics, prior arests, and his transportation down to court. The prosecution objected to the questions and all such objections were sustained by the trial court. Defendants argue that their constitutional right of confrontation was violated by the trial court's failure to allow inquiry into the above matters, concerning particularly the narcotic informer's residence at the time of the sale, his prior arrests, his work as a special police employee and the amount and costs of his use of narcotics. Through examination of the witness on those matters, defense counsel sought to discredit his reputation for truth and veracity. In our opinion sufficient inquiry was allowed to make the court aware of the witness's propensity for truth and capacity to observe, retain and relate accurately. At the time of the cross-examination of Henry, it had already been established that he was an addict and an informer for the police, that he was not under arrest at the time of the sale, that he had been convicted and incarcerated several times in the past, that he used drugs two days before the alleged illegal sale, that he used heroin, that he resided at 6429

Aberdeen, that no cases were pending against him and that he had been promised nothing by the police in return for his services. There was ample inquiry allowed to make the trial judge aware of the witness's propensity for truth and capacity to observe, retain and relate accurately.

The defendants next argue that they were denied their constitutional rights under the fourteenth amendment by the State's knowing introduction of perjured testimony of the informer. This was based upon the testimony of Henry that he had known the defendant in high school. Carter denied the school relationship and later proved on his post-conviction hearing that he had not attended the same school as the witness. Neither the defendants on review nor Carter on his post-conviction hearing established that the State knew the informer was giving misinformation when he testified that he had gone to school with Carter. There was no denial of defendant's constitutional rights since the discrepancy in the evidence goes only to the credibility of the witness.

Defendants assert that since Henry was an informer, he should be treated as a policeman who had taken the stand and offered perjured testimony. They cite *Barbee* v. *Maryland* (4th cir.), 331 F.2d 842, where it was held that the withholding of exculpatory information or perjury by police officers violates a defendant's constitutional rights. The reasoning behind the *Barbee* decision seems to be that the testimony of a police officer is given greater credence by members of a jury than is the testimony of a defendant. Defendants ask that we extend the rationale of *Barbee* to the case of an informer. The only allegation defendants make in this connection is that the State should be held to have constructive knowledge of its witness's veracity and be responsible for the false statements of informers—just as it would be for false statements uttered by a police officer. Such conclusion is without precedent

and we do not adopt it. An informer-addict does not enjoy the same credibility advantage as a police officer and the *Barbee* theory does not apply.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.