**People of the State of Illinois, Plaintiff-Appellee, v. James Duncan, Otherwise Called James Bunk, Defendant-Appellant.**

**Gen. No. 53,020.**

First District, First Division.

August 12, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Saul H. Brauner, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's

Attorney, and Robert Kelty, Special Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, James Duncan, was charged with the crime of unlawful sale of a narcotic drug in violation of section 22–3 of the Criminal Code (Ill Rev Stats 1967, c 38, § 22–3). After a jury trial, he was found guilty and was sentenced to a term of not less than twelve years nor more than eighteen years in the penitentiary.

The defendant alleges, on appeal, that his conviction rests solely on the uncorroborated testimony of a narcotics addict and that, therefore, he was not proven guilty beyond a reasonable doubt.

The record reveals that on June 28, 1966, the defendant was arrested for his alleged participation in the illegal sale of heroin to Al Nichols, who had been a Chicago Police Department informer for three years. Mr. Nichols testified that on June 28, 1966, he went to Police Headquarters at 11th and State where he met Detectives Nance and Williams and informed them that he could buy narcotics from a man he knew as "Bunky." After being stripped and searched, Nichols was given $17, two fives and seven ones, which were inventoried and marked.

The informer and the two above-mentioned officers then drove to the vicinity of Roosevelt Road and Damen Avenue and parked there. Nichols left the police and went to the southwest corner of the intersection. There he met the defendant and told him that he wanted to buy some narcotics. Nichols said that he knew the defendant because on two previous occasions he had purchased drugs from him in the defendant's apartment.

Nichols further testified that the defendant told him to come upstairs with him to his apartment. When the defendant and the informer arrived at the defendant's

411

apartment, there were four or five other people there. The only other one Nichols knew was Sammie Lee. Nichols gave the Seventeen Dollars to the defendant, who in turn gave it to Sammie Lee. The narcotics were not ready, but when they were Sammie Lee told Duncan, the defendant, to "turn him." After Duncan gave Nichols a tinfoil package, the informer returned to the police car and gave the package to Detective Nance.

Al Nichols admitted that he had been a drug addict for the past 15 years and that he was still addicted to drugs. He also stated that he was convicted of a felony in 1953 and one in 1957, for which he was sent to the penitentiary.

Detective Nance testified that on June 28, 1966, he and his partner took Nichols to the corner of Damen Avenue and Roosevelt Road. There the officer observed the informer conversing with another male Negro. Nance said that from where he parked he was able to observe the stranger's height, his dark complexion and his thin build. The officer also said the stranger was wearing a blue shirt and a light cap. After about a minute the informer and his companion disappeared behind a liquor store at 1208 South Damen Avenue. Twenty minutes later, according to Detective Nance, Nichols returned to the unmarked squad car and gave him a small tinfoil packet which contained a white substance.

Immediately after having a conversation with the informer, Detective Nance and his partner, who were in plain clothes, went to the defendant's apartment at 1208 South Damen Avenue. After the two police officers were admitted into the apartment, they identified themselves, and lined the six or seven male Negroes in the room up against a wall. Nance testified he then asked if there was a person in the room by the name of Bunk or Bunky. The defendant answered. Detective Nance said that when the defendant stepped forward he recognized

412

him as the man who was talking to Nichols a short time before at the corner of Damen and Roosevelt.

After placing defendant Duncan under arrest, the two officers proceeded to search all the people in the apartment. A search of the defendant did not recover anything, but when Sammie Lee Gray was searched the police found the prerecorded bills they had given to Nichols.

Shirley Krause, a chemist for the Chicago Police Crime Detection Laboratory, testified that she performed the routine examination on the substance in the tinfoil packet given to Detective Nance, and in her opinion, the substance was heroin diacetyl morphine hydrochloride.

The defendant maintains that the conviction in the case at bar rests solely on the testimony of a narcotics addict who is a police informer. Moreover, the defendant argues, the testimony of the addict-informer was not corroborated and that, therefore, following the rulings in People v. Bazemore, 25 Ill2d 74, 182 NE2d 649; People v. Minor, 70 Ill App2d 464, 217 NE2d 316; and People v. Watkins, 68 Ill App2d 389, 216 NE2d 494, the defendant was not found guilty beyond a reasonable doubt.

In all three cases cited by the defendant the convictions were reversed because there was no corroboration of the informer's testimony. This is made patently clear in Bazemore when the Illinois Supreme Court stated:

> This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, *from an immediate arrest,* or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one. 25 Ill2d 74, 77, 182 NE2d 649, 651 (emphasis added).

In the case before us, however, we find that there is sufficient corroboration of the informer's testi-

mony. Although the police did not witness the transaction in question, Officer Nance did testify that he recognized the defendant Duncan as the man Nichols met on the corner of Damen and Roosevelt Road. Defendant Duncan also answered to the nickname of "Bunky" verifying the informer's testimony on that point. Most importantly, though the police did not recover the inventoried money from the defendant, they did find it on the person of Sammie Lee Gray in the defendant's apartment when the defendant and Gray were arrested. This fact lends credence to Nichol's story that Duncan had been given the money and had turned it over to Gray. Lastly, the police found and arrested the defendant immediately after being directed to his apartment by the informer. Because of these corroborating circumstances we cannot consider any of the defendant's cases as dispositive of the issue before us.

While it is true that habitual users of narcotics often become notorious liars and the chronic morphinomanic is often a confirmed liar, People v. Crump, 5 Ill2d 251, 125 NE2d 615, the fact that a witness is a narcotics addict bears only upon his credibility. It does not follow that his testimony must necessarily be disbelieved, especially when it is corroborated by other witnesses. People v. Carter, 69 Ill App2d 448, 217 NE2d 413. Here the circumstances support the informer's story.

The jury saw the informer, heard his testimony and found it credible. This court will not substitute its judgment on the matter of credibility of witnesses and the weight to be given their testimony where the trier of fact saw and heard their testimony, unless we can say that the proof was so unsatisfactory as to justify reasonable doubt as to the defendant's guilt. People v. Romero, 54 Ill App2d 184, 203 NE2d 635. We conclude

that the testimony of the informer is corroborated by evidence and the surrounding circumstances in the record and that the testimony was sufficient to establish the guilt of the defendant beyond a reasonable doubt.

Accordingly, the judgment and conviction of the defendant is affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.