THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILLARD V. HUBBARD *et al.*, Defendants-Appellants.

(Nos. 55146, 55160 cons.;

First District—March 14, 1972.

*Rehearing denied April 20, 1972.*

Gerald W. Getty, Public Defender, and Howard T. Savage, both of Chicago, (James J. Doherty and Shelvin Singer, Assistant Public De·fenders, and Howard O. Edmonds, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael R. Epton, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

These are consolidated appeals. Defendants Millard V. Hubbard and Charles McClindon were jointly indicted for the murder of Leon Hunt. They were convicted by a jury. Hubbard was sentenced to serve 20 to 50 years; McClindon, 30 to 50. The material facts appear from the testimony of two occurrence witnesses and two investigating officers.

On January 21, 1968, Virginia Williams, her mother and four children, lived in an apartment at 5050 South Drexel Boulevard in Chicago. Leon Hunt, father of two of her children, one a girl named Cassendra, then 16 years of age, was staying in the apartment. Sometime between 1:30 and 1:45 A.M., while Virginia Williams was away, Hubbard and McClindon came to the front door and rang the bell. Leon Hunt told Cassendra to let them in. A short time later Virginia Williams returned. She knew both defendants. She found them and Leon Hunt engaged in a loud argument. Although she could not tell what they were arguing

about, she requested them to take their argument outside. Leon Hunt and the two defendants stepped into a washroom and closed the door. Virginia Williams could hear the argument continue. Then she heard a shot. She heard two men run past her bedroom. Cassendra Williams, who was then on the front porch, saw the two defendants run out of the apartment. As Hubbard went by her, she saw him put a gun in his belt. Virginia Williams went into the bathroom where she found Leon Hunt on his back, unconscious, shot, cut in the ear and bleeding from his mouth. The police were called; and at about 3:15 A.M., Officer Fred Lloyd of the Chicago Police Department arrived. He found Virginia Williams in the bathroom with Leon Hunt. She told Officer Lloyd that Hunt had come into the apartment by the back door, that she opened it, and that he stumbled in with his coat in his hand saying that some men had "jumped" him. Before leaving the apartment, Lloyd went out the back door to look for tracks of blood, but found none.

Later in the morning, Detective James Hogan, responding to a radio message, went to 5050 Drexel Boulevard. He entered the bathroom and saw blood on the floor. He proceeded out the back door and examined the porch, railings, cement walk leading to the stairs, and the alley, looking for blood. He found none, other than in the washroom. He searched the apartment but found no weapon. At approximately 4:30 A.M., Hogan, his partner, Virginia and Cassendra Williams went to a police station. There he was furnished with two names: "Charlie and Vic." He contacted the Bureau of Identification and checked the name "Ingram" along with the first name of "Charlie" and "Vic." This disclosed the name of "Charles Ingram," 4145 South Drexel. At the trial, Detective Hogan testified that he knew "Charles Ingram" as the defendant, Charles McClindon. After Virginia Williams, Cassendra Williams, Officer Lloyd and Detective Hogan testified, the prosecution and the defense stipulated that if Doctor J. Belmonte, a pathologist, was called as a witness, he would testify that on January 21, 1968, he performed an autopsy on Leon Hunt; and that in his opinion, Hunt died from a bullet wound in the chest. The State rested. Neither defendant testified nor offered any evidence. Thereafter, the jury returned its verdicts of guilty. The court, after overruling post-trial motions and conducting a hearing in aggravation and mitigation, entered the judgments from which the consolidated appeals were taken. Defendants each contend that they were not proven guilty beyond a reasonable doubt, either as principals in the homicide of Leon Hunt or as persons accountable for his murder. Additionally, McClindon contends he was denied a fair trial by the testimony of Detective Hogan who was allowed to testify concerning a name-check he made with the Bureau of Identification, a

fact which tended to suggest to the jury that he, McClindon, had a criminal record.

■■■ This contention is without merit. McClindon's identity was in issue. Evidence which proves a fact in issue is admissible, even though it may disclose that a defendant has committed another crime. (Compare *People v. Dewey*, 42 Ill.2d 148, 246 N.E.2d 232.) In *People v. Abbott*, 110 Ill.App.2d 462, 249 N.E.2d 675, for example, we held that the court did not err in permitting a police officer to testify that he recognized defendant's name "through other investigative procedures." Although this testimony hinted at defendant's police record in the presence of the jury, we ruled that the trial court correctly denied defendant's objection to it. In doing so, we applied the well-settled rule that evidence which places a defendant at or near a crime, aids in establishing his identity or tends to prove design, motive or knowledge, is admissible even though it may establish his commission of other crimes or suggest that he has a criminal record. See *People v. Botulinski*, 392 Ill. 212, 64 N.E.2d 486; *People v. Armstrong*, 41 Ill.2d 390, 243 N.E.2d 825; *People v. Robinson*, 98 Ill.App.2d 285, 240 N.E.2d 397.

To support their contention that either as principals or as accountable persons they were not proven guilty of the murder of Leon Hunt, defendants argue that the substance of the State's evidence was the testimony of Virginia and Cassendra Williams. Virginia Williams, defendants point out, was an admitted narcotic addict and a prostitute who first told a version of Hunt's death which she had to admit under oath was a lie. Her daughter, 16-year-old Cassendra, was present when her mother lied; yet, she did not contradict nor correct her. Neither witness saw who shot Hunt. Indeed, their testimony concerning the event, defendants insist, was confusing. For these reasons, defendants argue that Virginia and Cassendra Williams were not credible witnesses, their testimony was unworthy of belief. Hence, the evidence they gave was insufficient to convict.

■■■ The fact that Virginia Williams was a narcotic addict (and a prostitute as well), bore only on her credibility. These aspects of character did not compel rejection of her testimony, especially when it was corroborated by her daughter and by other facts and circumstances. (*People v. Smith*, 41 Ill.2d 158, 242 N.E.2d 198; *People v. Duncan*, 113 Ill.App.2d 410, 252 N.E.2d 7.) Concerning what she first said about Hunt's death, it is a rule, applied in civil and criminal cases, that even though a witness makes an inconsistent extra-judicial statement, that fact, *per se*, does not destroy the probative value of his testimony. It is for the trier of the facts to determine whether the truth is in the extra-judicial statement or in the testimony. *Guthrie v. Van Hyfte*, 36 Ill.2d 252, 258,

222 N.E.2d 492; *People v. Ramirez,* 124 Ill.App.2d 407, 260 N.E.2d 435; also see 58 Am. Jur. Witnesses, § 863.

■■ Defendants' argument that there was no evidence to show which, if any of them, shot Leon Hunt or that they acted in concert to accomplish that criminal objective, overlooks the principle that proof of a common purpose need not be supported by words of agreement or direct evidence, but can be drawn from circumstances surrounding the commission of an act by a group. (*People v. Johnson,* 35 Ill.2d 624, 221 N.E.2d 662; *People v. Williams,* 104 Ill.App.2d 329, 244 N.E.2d 347.) Application of this principle can be seen in *People v. Thicksten,* 14 Ill.2d 132, 150 N.E.2d 813. There, three men were riding in a car, all in the front seat. One, Applewhite, sitting in the middle, asked for an opportunity to go a rest-room. The driver, one Bevard, stopped the car. Thicksten, who was sitting on the right, let Applewhite out. As he left, Applewhite was struck on the back of the head and knocked unconscious. He did not see who hit him. When he regained consciousness, he was lying in a ditch along the road, his billfold and two watches were missing. The car, with Bevard and Thicksten, had disappeared. Both Thicksten and Bevard were arrested, tried and convicted of robbery. On appeal, Thicksten contended, as do defendants here, that there was no direct evidence that he did any affirmative act in connection with the crime or joined in a common design to commit it. The Supreme Court held that there was more in the evidence than mere presence at the scene of a crime.

"[Thicksten] was closely associated with Bevard immediately before and after the crime, as well as at the time it was commited. No other person except the victim was in the vicinity at the time, and [he] left Applewhite lying unconscious in the ditch and accompanied Bevard to a tavern, where they bought drinks for the house, and then went on together to a restaurant. There is no evidence showing an attempt upon his part to notify authorities or anyone else of the event, nor is there anything to show he was prevented from doing so. In the absence of explanation, such conduct is not consistent with that of an innocent person similarly situated, and is sufficient to support an inference that a common understanding or design existed between Bevard and [Thicksten]." 14 Ill.2d 132, 134.

■■ *Thicksten,* in our judgment, controls this case. The evidence proved, beyond a reasonable doubt, that defendants failed to offer an explanation for their conduct, either immediately before, during or after the killing of Leon Hunt. This failure was inconsistent with the behavior of persons similarly situated and innocent of the crime which was committed. Therefore, defendants' conduct supported the inference that a common understanding or design existed between them when they en-

tered the Williams' apartment, engaged in an argument with Leon Hunt and one or the other of them shot him. (*People v. Thicksten, supra.*) Where two or more defendants have a common design to accomplish an unlawful purpose, the act of one is the act of all and all are equally guilty of whatever crime is committed. *People v. Nowak*, 45 Ill.2d 158, 258 N.E.2d 313; *People v. Bracey*, 110 Ill.App.2d 329, 249 N.E.2d 224.

It was the province of the jury to determine the guilt or innocence of the accuseds. We will not set aside its verdicts unless they are palpably contrary to the weight of the evidence. *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840; *People v. Sanders*, 129 Ill.App.2d 444, 263 N.E.2d 615. From the evidence it heard, the jury could and did find that when defendants entered the Williams' apartment, they had a common design and that each of them participated in killing Leon Hunt without lawful jusification. Therefore, either as principals or as persons accountable, defendants, beyond a reasonable doubt, were proven guilty of the murder of Leon Hunt. The judgments are affirmed.

Judgments affirmed.

SCHWARTZ and LORENZ, JJ., concur.