THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEVI GREENLEE *et al.*, Defendants-Appellants.

Fifth District   No. 76-137

Opinion filed December 20, 1976.

James C. Hickman, of Chicago, for appellant Henry Allen.

Rodgon & Schwartz, of Chicago, for appellant Levi Greenlee.

Bernard A. Paul, of Marion, for appellant James Climons.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendants, James Climons, Levi Greenlee and Henry Allen, were charged by indictment filed in the circuit court of Williamson County, with the offense of armed robbery. Defendant Climons was additionally charged with attempt murder but this charge was dismissed on a motion by the State. Following a jury trial, the defendants were found guilty as charged and the trial court sentenced Climons to a term of 6 to 30 years, Greenlee to a term of 5 to 20 years, and Allen to a term of 4 to 12 years imprisonment. The defendants bring this appeal.

On appeal Climons contends that he was denied effective assistance of counsel; that he was denied a speedy trial; that the State failed to disclose certain evidence in its answer to his discovery motion; that the court erred in neglecting to rule on a motion to strike certain testimony; that he was denied due process of law by the use of a pretrial photographic identification; that the court erred in refusing to give an instruction; that the court erred in not excluding witnesses before Climons had been introduced to prospective jurors; and that the prosecutor committed error when he made a statement explaining the absence from the trial of two of the victims. Greenlee contends that he was also denied effective assistance of counsel; that the prosecutor committed error when he made a statement explaining the nonappearance of two of the victims; that he was not proved guilty beyond a reasonable doubt; and that error was committed in sentencing. On motion by defendant Allen, which we granted, the brief and arguments of Greenlee are also to be considered to have been made on behalf of Allen.

The facts in this case briefly stated are as follows: At 5:45 a.m. on April 20, 1975, Charles Norwood, Linda Johnson and Carolyn Hines were sleeping in a parked camper van, near Crab Orchard Lake east of Carbondale. They were awakened by Climons who announced a robbery and fired three or four shots, one of which went through the van.

Norwood opened the door to the van and was able to clearly see Climons' face in the sunlight. Climons took from his victims, money, a television set and a watch. Climons also removed a microphone from Norwood's citizens band radio and he shot a bullet into a built-in eight-track tape recorder. Climons then ran toward a car which backed up to him and stopped. The car was a late model Buick with a dark brown body and a white roof and it bore a 1975 license plate numbered KX582. Norwood saw one person in the driver's seat and another on the passenger side. After Climons entered the vehicle, it left by turning onto route 13 and headed toward Carbondale. Soon thereafter Norwood contacted the police. At approximately 6:20 a.m. Carbondale police apprehended the defendants who were driving in a vehicle matching Norwood's description. The vehicle had been heading west on route 13 and had just entered the city limits. Inside the automobile, police found a gun, a television set and a hat and coat. A watch was found in Climons' pocket. At trial, Norwood identified the television set and watch as property taken during the robbery. He also identified the gun as that used by Climons and the hat and coat as that worn by Climons during the robbery. On the morning of the robbery, through photographs, and subsequently at trial, Norwood positively identified Climons as the man who robbed him. Federal Bureau of Investigation agents testified that a fingerprint found on the gun matched that of Climons' right ring finger. In addition it was determined that the lead composition of live rounds found in the gun matched the composition of two spent projectiles recovered from Norwoods' van and that, although the projectiles were mutilated when found, the width of a groove impression on one of the bullet fragments matched the width of the grooves in the barrel of the gun.

After the State rested, the defendants elected to rest without putting on any evidence. Following the trial, no post-trial motion was filed by any of the three defendants.

Initially the Public Defender was appointed to represent the defendants. Subsequently, more than one month before trial, separate counsel was appointed by the court to represent Climons.

■■ On appeal, the defendants first contend that they were denied effective assistance of counsel from their respective court-appointed trial counsel. In Illinois, the cases have held that in order to successfully challenge the efficacy of counsel a defendant must demonstrate (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties at the trial, and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different. (*People v. Morris*, 3 Ill. 2d 437, 121 N.E.2d 810; *People v. Goerger*, 52 Ill. 2d 403, 288 N.E.2d 416.) However, a review of counsel's competency will not be appraised on the basis of matters involving the exercise of judgment,

discretion or trial tactics. *People v. Newell,* 48 Ill. 2d 382, 268 N.E.2d 17; *People v. Turner,* 36 Ill. App. 3d 77, 343 N.E.2d 267.

■■ In support of his contention, Climons argues that his counsel failed to object "to the in-court identification of the defendant in front of witnesses prior to their testimony." Although Climons failed to cite the portion of the record complained of in his brief, it appears that the incident involved the trial court's introduction of him to prospective jurors during the beginning of voir dire on the day before the trial began. Climons' argument is that this introduction permitted Climons to be viewed by Norwood before Norwood was called upon to identify Climons under oath. The record, however, does not show that Norwood was present at any time during voir dire. In a direct appeal review is limited to what appears in the record. (*People v. McCarroll,* 10 Ill. App. 3d 249, 294 N.E.2d 52.) Since the record does not support Climons' factual allegation, we shall not consider the argument raised thereon.

■■ The defendants next argue that their trial counsel's incompetence was shown by the failure to object to a statement made by the prosecutor in the presence of the jury. At trial, following cross-examination of Norwood by the Public Defender wherein the jury learned of the absence from the trial of two of the eyewitnesses, the prosecutor stated:

> "* * * I would like to make a representation to the Court that Linda Johnson and Carolyn Hines were subpoenaed and we had telephone conversations with them. One of them has a one year old child and the other one is unable to attend the trial."

It appears that the failure to object by counsel was a matter of trial tactics. The prosecutor's statement had the effect of emphasizing the absence of the two witnesses and it was extensively utilized by defense counsel to suggest that the witnesses may not have testified favorably for the State. In any event, no substantial prejudice was shown by defense counsel's failure to object since the statement itself had not suggested what the witnesses would have testified to had the witnesses appeared.

■■ Climons further cites his counsel's failure to call any witnesses in his behalf. But Climons does not argue nor does it appear from the record that there existed any witnesses whose testimony may have been beneficial to him. The failure to call witnesses cannot be the basis of a claim of incompetency of counsel where such failure appears to be a matter of trial strategy. (*People v. Hines,* 34 Ill. App. 3d 97, 339 N.E.2d 489.) Moreover, defense counsel has no duty to manufacture a defense where none exists. (*People v. Davis,* 16 Ill. App. 3d 846, 306 N.E.2d 897.) Under the circumstances, we find no merit to this argument.

Defendants Greenlee and Allen assert that their counsel's incompetence is shown by his failure to file a motion to suppress statements made to the police. No more need be said than to note that the record

shows that this motion was, in fact, filed and that although no hearing was held thereon, the statements at issue were never introduced at trial.

■■ Further, they assert that their counsel's failure to tender IPI—Criminal No. 3.02 on the definition of circumstantial evidence, establishes incompetence and prejudiced their defense theory. The evidence against Greenlee and Allen was wholly circumstantial but neither paragraph of IPI—Criminal No. 3.02 was given to the jury. The gist of their argument is that the jury was thus not given the second paragraph of the instruction stating:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

However, contrary to their statements in their brief, no argument was made in the trial court that the evidence had not excluded every reasonable theory of innocence. Rather, the defense theory as manifested by the closing argument was that there was no direct evidence connecting Greenlee and Allen to the crime. Impliedly, counsel argued that the evidence being wholly circumstantial left a "gap" of reasonable doubt. That this tactic, in retrospect, was unsuccessful does not indicate incompetence. (*People v. Williams*, 28 Ill. App. 3d 402, 328 N.E.2d 682.) Clearly, the failure to tender IPI—Criminal No. 3.02 was a part of the defense strategy since the first paragraph would have informed the jury that the defendants may be found guilty on the basis of circumstantial evidence. In any event, in light of the evidence, we do not believe that the failure to tender the instruction so prejudiced the defendants that, but for the omission, the outcome of the trial would have been different. *People v. Williams*, 28 Ill. App. 3d 402, 328 N.E.2d 682; *People v. Stewart*, 24 Ill. App. 3d 605, 321 N.E.2d 450.

Lastly, Climons, Greenlee and Allen contend that their counsel's incompetence is shown by the failure of both attorneys to file a post-trial motion. They argue that thus the trial errors alleged by appellate counsel are not preserved for review and reliance must be made upon Supreme Court Rule 615 (Ill. Rev. Stat. 1975, ch. 110A, par. 615) to find that plain error exists in the record.

■■ Generally, the failure to raise an issue in a motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on appeal. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin*, 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Price*, 32 Ill. App. 3d 610, 336 N.E.2d 56.) To have preserved an issue for appeal a defendant should have specifically informed the trial court of an alleged error and given the court an opportunity to correct that error. In addition, the waiver rule is enforced so as not to allow a defendant to object to that which he has acquiesced in through the course of the trial. (*People v.*

*Morgan*, 44 Ill. App. 3d 459, 358 N.E.2d 280.) Because no post-trial motion was filed, the defendants are deemed to have waived the numerous assignments of error they now seek to raise on appeal. While the failure to file a post-trial motion may be a factor to consider in evaluating counsel's competence, in the case at bar, actual incompetence is not shown thereby since none of the issues raised on appeal would have affected the defendants' convictions had they been raised in a post-trial motion and the effort would have been futile.

A cursory review of the issues raised on appeal not heretofore examined would be appropriate. In his brief on appeal, the first two contentions raised by Climons are that he was denied a speedy trial and that error was committed in the admission of experts' testimony because the State had failed to disclose such evidence in response to his discovery motion. Both of these contentions are flatly contradicted by the record which shows that Climons was in custody for less than 120 days prior to his trial and that the State had disclosed the material in issue, in response to the discovery motion, well in advance of trial.

Climons also contends that the trial court erred "by neglecting to rule" on a motion to strike the testimony of FBI agent Crum. Crum testified in connection with the chain of custody of various exhibits. These included the gun, bullet fragments and a fingerprint card. Climons' motion was based on the assertion that "these items have no probative value in this case." The court reserved its ruling until the State had an opportunity to establish a proper chain of custody of the exhibits. Subsequently, no objection was made to the admission of the exhibits. While we find that the items in question were of sufficient probative value, the issue was nonetheless waived by the failure to reassert the objection. We find no error by the court's reservation of its ruling on defendant's motion to strike.

Climons next contends that the use of a pretrial photographic identification procedure gave rise to a substantial likelihood of irreparable misidentification. We find no merit to this contention since evidence adduced at a hearing on Climons' motion to suppress established little chance of misidentification. (*Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) Norwood had an ample opportunity to observe Climons under good viewing conditions on the day of the crime and on that same day he identified Climons' picture from a group of seven photographs. Photographs were used because a sufficient number of people of the same race as Climons were not then available for a lineup procedure.

Climons' remaining contention is that the court erred in refusing an instruction tendered by him. Yet we find no support in the record for the giving of the instruction and thus find no merit to this contention.

■■ Greenlee and Allen raise the additional issue that their guilt was not proved beyond a reasonable doubt. The evidence against these defendants was wholly circumstantial. Thus to support their convictions it is essential that the facts proved be not only consistent with their guilt, but must also be inconsistent with any reasonable hypothesis of innocence. (*People v. Lewellen*, 43 Ill. 2d 74, 250 N.E.2d 651; *People v. Holsapple*, 30 Ill. App. 3d 976, 333 N.E.2d 683.) The Supreme Court stated in *People v. Marino*, 44 Ill. 2d 562, 580, 256 N.E.2d 770, 780:

> " '[That] a conviction may be sustained upon circumstantial evidence * * * it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. * * *' "

The defendants argue that the evidence at trial was not inconsistent with every reasonable hypothesis of innocence. No such hypothesis is put forth by the defendants nor do we find one suggested by the evidence. Allen does argue that he may have possibly entered the car after the robbery, not knowing of its commission. However, a trier of fact is not required to search for a series of possible explanations compatible with innocence to elevate them to the status of a reasonable doubt. (*People v. Huff*, 29 Ill. 2d 315, 194 N.E.2d 230.) The evidence established that Climons robbed the victims and left in a car containing two other persons. Shortly thereafter, the defendants were found in that car along with the property taken and the weapon used. We find this undisputed evidence sufficiently supported the jury's verdict.

In *People v. Peter*, 55 Ill. 2d 443, 447, 303 N.E.2d 398, 401, the court stated that:

> ·"A defendant is not entitled to an error-free trial and few trials are free from error."

In the case at bar, counsel for the defendants were obviously well prepared and ably tried the case for the defendants. Cross-examination of the State's witnesses was vigorous and arguments were succinct and lucid. The evidence was overwhelming and no prejudicial error occurred. We thus affirm the convictions of the defendants.

Finally, Greenlee contends that his sentence was improperly enhanced by the trial court. At issue is Greenlee's testimony at his sentencing hearing:

> "Q. And you are charged, along with Mr. Climmons [*sic*], of having armed robbed some people in a Van, is that correct"
> A. That's what the file said.
> Q. Do you know anything about that at all?
> A. No, I don't know nothing about it.

Q. You were not there at the time, is that correct?

A. No, I was not there at the time of it."

Subsequently, after sentencing Allen to a term of 4 to 12 years imprisonment the trial court addressed Greenlee as follows:

"I was somewhat disappointed, I think contrary to what Mr. Allen did you took the witness stand and committed a perjury today. * * * Now, why you got up on this witness stand and tried to sucker me, so to speak, I don't know. * * * I can take that into account and I am taking it into account. * * * So, I am going to give you a little higher sentence, Mr. Greenlee, because of your perjury, your disregard for the law."

Greenlee was then sentenced to a term of 5 to 20 years imprisonment.

■■ Greenlee contends that the trial court denied him his right to a trial on the charge of perjury by the court's enhancement of the sentence imposed based on the belief that Greenlee committed perjury at the hearing.

In *Scott v. United States*, 419 F.2d 264, 269 (D.C. Cir. 1969), the court stated:

"The Government could if it wished prosecute the appellant for perjury. In such a proceeding, the appellant would have all the protections of a criminal trial. If the trial judge in fact imposed additional punishment upon the appellant for the supposed commission of perjury, he plainly denied the appellant the trial upon that offense to which Scott was entitled."

In the case at bar, the trial court clearly in fixing sentence imposed an additional penalty upon the defendant because of its belief that Greenlee committed perjury. This was an improper factor for the court to consider in fixing sentence. (*People v. White*, 130 Ill. App. 2d 775, 267 N.E.2d 129.) In *People v. Busch*, 15 Ill. App. 3d 905, 305 N.E.2d 372, the court in determining whether the trial judge in sentencing upon a revocation of probation improperly considered the defendant's admitted perjury at the hearing, held that "[I]n determining defendant's potential for rehabilitation and in fixing proper sentences, the trial judge was entitled to consider defendant's admittedly false testimony at the revocation hearing." (15 Ill. App. 3d 905, 908, 305 N.E.2d 372, 375.) *Busch* is distinguishable from the case at bar because (1) there the defendant admitted his perjury and (2) the perjury was considered in connection with the defendant's potential for rehabilitation. In the instant case, the consideration of perjury stemmed not from an admission by the defendant but from a supposition by the trial court. Moreover, the record affirmatively shows that the court had not considered the alleged perjury in connection with determining the defendant's potential for rehabilitation but had considered it as separate crime deserving special

punishment as part of the sentence for armed robbery. Consequently, pursuant to our authority under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)), we reduce the sentence imposed upon Greenlee to a term of 4 to 12 years imprisonment.

For the foregoing reasons, we affirm the judgments of the circuit court of Williamson County as modified.

Affirmed as modified.

KARNS and G. J. MORAN, JJ., concur.