THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD LAMPARTER, Defendant-Appellant.

Fifth District    No. 76-333

Opinion filed December 23, 1977.

Michael J. Rosborough and Michael Yovovich, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas Byron, State's Attorney, of Edwardsville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Harold Lampatter, was charged in the circuit court of Madison County with unlawful delivery of less than 30 grams of a substance containing heroin. Following a jury trial defendant was found guilty as charged and he was sentenced to a term of three to nine years imprisonment. Defendant brings this appeal.

Defendant's conviction stems from an illegal transaction made on January 26, 1976, at 6 p.m. to Gary Cammerer, a paid informant for the Metropolitan Enforcement Group (MEG). The State's evidence showed that on that date Cammerer and two agents for MEG, Dennis Joyce and Dan Hempe, drove to the apartment of Jim Skelton, defendant's brother-in-law, where three or four times in the past they had gone to buy heroin. While Hempe waited outside, Cammerer and Joyce went to the door of the apartment and were allowed in by defendant. In addition to defendant, James Jennings and an unidentified woman were inside the apartment, Skelton, however, was not present. Jennings, at that time, had a shirtsleeve rolled up and a syringe in his hand. Cammerer, with whom Jennings was acquainted, inquired about the purchase of heroin and he, Jennings and defendant went into the kitchen to discuss the purchase while Joyce and the unidentified woman remained in the living room. Joyce testified that he then went to the bathroom and as he walked through the kitchen he saw a spoon on the table and a brown bottle in the hand of Jennings, both of which he believed contained heroin. Once back in the living room, Joyce was informed by Cammerer that a purchase of one-half gram of heroin could be made for $50. Joyce gave Cammerer the money and Cammerer went back into the kitchen. Cammerer testified that he then handed Jennings the money and defendant in turn handed him a tin foil containing powder. Cammerer asked where he could, in the future, buy more heroin and he was told to go to defendant's mother's house. When Cammerer stated that he did not know where it was, he was told to come back to Skelton's home since someone would be there. Cammerer handed Joyce the tin foil packet and the two left the apartment. The packet was placed in the locked glove compartment of Joyce's car, where it remained over night, and it was eventually sent to a crime laboratory where it was identified as containing .2 grams of a

substance containing heroin. Joyce explained the discrepancy in the weight of the heroin requested and that actually purchased as a result of the fact that when heroin is sold in such small amounts as here involved, it is actually sold by volume rather than weight.

Defendant presented an alibi defense. His mother testified that on the date in question she was to drive her sister, Katherine Miller, shopping but was unable to and that defendant therefore took Miller instead. Miller stated that she and defendant left around 3:20 p.m. and drove to two shopping centers in the St. Louis area. During the course of the evening they twice stopped to eat and had returned to her home around midnight. Defendant corroborated the testimony of his aunt and he denied having met Cammerer or Joyce or having heard of Jennings. Following the trial, defendant's retained counsel failed to file any post-trial motion, written or oral.

■■ On appeal defendant presents four issues for review: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied a fair trial because the State elicited from defendant on cross-examination his prior use of drugs and had emphasized this fact during closing arguments; (3) whether he failed to receive effective representation from defense counsel; and (4) whether his sentence is excessive. The State responds by moving to dismiss the instant appeal because of the failure to file a post-trial motion. (See *People v. Hammond,* 48 Ill. App. 3d 707, 362 N.E.2d 1361.) Since we find plain error denying defendant a fair and impartial trial and ineffective assistance of counsel in asserting and preserving such error, the State's motion is denied.

We turn first to defendant's contention that he received ineffective assistance of counsel. The test applied by our supreme court where, as here, trial counsel had been privately retained is whether the representation was of such a low caliber as to have amounted to no representation at all or which reduced the court proceedings to a farce or a sham. (*People v. Torres,* 54 Ill. 2d 384, 297 N.E.2d 142; *People v. Redmond,* 50 Ill. 2d 313, 278 N.E.2d 766; *People v. Somerville,* 42 Ill. 2d 1, 245 N.E.2d 461; but see *People v. Hawkins,* 23 Ill. App. 3d 758, 320 N.E.2d 90 (which criticizes separate tests for retained and appointed counsel).) In the case at bar defendant primarily bases his claim upon his counsel's failure to have filed a post-trial motion for a new trial.

■■■ It has long been well established that generally the failure to raise an issue in a motion for a new trial constitutes a waiver of that issue and a defendant cannot then urge that issue as a ground for reversal on appeal. (*People v. Pickett,* 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin,* 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Price,* 32 Ill. App. 3d 610, 336 N.E.2d 56.) As stated in *People v. Irwin:*

"Requiring defendant's written motion for a new trial to specify the errors allegedly entitling him to a new trial may save the delay and expense inherent in an appeal in those instances where the motion is meritorious. Additionally, it focuses the attention of the trial judge upon those aspects of the proceedings of which the defendant complains, and gives to the reviewing court the benefit of the judgment and observations of the trial court with reference thereto." (32 Ill. 2d 441, 443-444, 207 N.E.2d 76, 78.)

Moreover, the waiver rule prevents a defendant from raising on appeal that in which he has in fact acquiesced. (*People v. Morgan,* 44 Ill. App. 3d 459, 358 N.E.2d 280; *People v. Whitlow,* 48 Ill. App. 3d 425, 363 N.E.2d 102.) Where, as a minimum, a general oral motion for a new trial has been made without objection by the State, such has been held sufficient to preserve for appeal all errors which are properly preserved on the record. (*People v. Whitehead,* 35 Ill. 2d 501, 221 N.E.2d 256.) On the other hand, the failure to file any post-trial motion, written or oral, has been deemed to be a waiver of the errors raised on appeal warranting a dismissal of the appeal. *People v. Hammond,* 48 Ill. App. 3d 707, 362 N.E.2d 1361.

■■ To ameliorate the harshness of the waiver rule, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) permits a reviewing court to take notice of plain errors affecting substantial rights. However, this rule does not mandate reviewing courts to consider all errors not properly preserved involving substantial rights. Rather, under the rule, reviewing courts may, as a matter of grace, take notice of such errors where they deprived a defendant of substantial means of enjoying a fair and impartial trial or in cases where the evidence is closely balanced. *People v. Pickett.*

It can thus be seen that where a defendant has a meritorious claim of error committed at trial, his trial counsel's failure to file a motion for a new trial will only serve to deny the trial court the opportunity of considering the error at a time when such consideration may be best given and of granting a new trial at a time when to do so would best serve the ends of justice. Further, the failure to file a post-trial motion will only act to waive consideration of the error except in those few cases where the reviewing court will notice the error pursuant to Supreme Court Rule 615(a), and then, a deserved new trial will only have been gained by a defendant upon the unnecessary cost of the delay and expense inherent in an appeal.

■■ It follows that where a claim of ineffective assistance of counsel is based upon counsel's failure to file a post-trial motion consideration of the trial errors alleged on appeal, to determine whether any such contentions are of substantial merit, is compelled. (*People v. Greenlee,* 44 Ill. App. 3d

536, 358 N.E.2d 649; see also, *People v. Bailey*, 42 Ill. App. 3d 638, 356 N.E.2d 410.) In *Greenlee* the defendants contended that their appointed counsel were incompetent in failing to file a post-trial motion. This court stated that:

> "Because no post-trial motion was filed, the defendants are deemed to have waived the numerous assignments of error they now seek to raise on appeal. While the failure to file a post-trial motion may be a factor to consider in evaluating counsel's competence, in the case at bar, actual incompetence is not shown thereby since none of the issues raised on appeal would have affected the defendants' convictions had they been raised in a post-trial motion and the effort would have been futile." 44 Ill. App. 3d 536, 542, 358 N.E.2d 649, 655.

The same conclusion as in *Greenlee* that the filing of a post-trial motion would have been a futile effort cannot be made in the instant case since, to the contrary, we find plain error appearing on the record.

During the prosecution's cross-examination of the defendant the following ensued:

"Q. Do you use drugs?

A. No.

Q. Have you ever used drugs?

A. I have.

Q. What kind of drugs have you used?

Defense Counsel: Your Honor, I'll object to this line of questioning. It's going back—

Prosecutor: It goes to impeach—

The Court: I'll sustain the objection.

Defense Counsel:—within that period of time.

Prosecutor: We'll create a time slot. In the past two years, have you ever used drugs?

A. In the past two years?

Q. Right.

A. Yeah.

Q. Okay, In the past two years what kind of—do you know what scheduled drugs are? I withdraw the question. Have you used any drugs that are illegal to use?

Defense Counsel: Your Honor, I'll object unless it's shown to have some relevance to the time of this alleged occurrence.

The Court: All right. I'll sustain the objection.

Prosecutor: You have used drugs in the past. Is that correct?

A. Right.

Q. Did you ever use drugs with Jim Skelton?

A. No.

Q. Did you ever use any drugs in January of 1976?

A. No.

Q. When did you stop using drugs?

A. Uh, right after I got in the Methadone Center.

Q. When were you in the Methadone program?

A. Uh—

Defense Counsel: Your Honor, I'll object. This is not relevant to this.

The Court: Sustained.

Prosecutor: What is a Methadone program?

A. A drug program.

Defense Counsel: I'll object, Your Honor.

The Court: Sustained.

Q. Do you know what ADDCO is?

A. Right.

Q. What is ADDCO?

A. Well, ADDCO was—ADDCO was the name of the, uh, program I was in.

Q. What kind of drug usage is treated at ADDCO?

Defense Counsel: I object.

The Court: Sustained.

Q. Did you ever discuss drug usage with Jim Skelton?

Defense Counsel: I object.

The Court: Sustained."

Thereafter, during closing arguments, the prosecution, on three separate occasions referred to defendant as a "drug user" who had "undergone methadone treatment," and additionally referred to him as a member of the "drug community."

■■ Evidence of criminal acts of misconduct by a defendant which are distinct and unrelated to the charge for which he is being tried is inadmissible. (*People v. Donaldson*, 8 Ill. 2d 510, 134 N.E.2d 776; *People v. Meid*, 130 Ill. App. 2d 482, 264 N.E.2d 209; *People v. McMillan*, 130 Ill. App. 2d 633, 264 N.E.2d 554; *People v. Bryant*, 1 Ill. App. 3d 428, 274 N.E.2d 491.) The law distrusts such evidence because it may create a tendency to condemn a defendant upon the belief that he has escaped unpunished from other offenses rather than upon a belief that he is guilty of the crime charged, and such evidence may create the inference that a defendant is guilty of the crime charged merely because he is a person who is likely to commit crime. (*People v. Lehman*, 5 Ill. 2d 337, 125 N.E.2d 506; 1 Wigmore, Evidence (3d ed. 1940).) Such evidence is admissible where it is independently relevant such as to show motive, intent, identity, absence of mistake or accident, or the existence of a common scheme or design. (*People v. Lehman.*) However, it is

undisputed that none of these conditions are here met. In the instant case, the State brought out by cross-examination the fact that defendant had been a drug user, specifically, by reference to methadone, a user of heroin. This point was also repeatedly stressed by the State in its closing argument. The effect could only have been to imbed upon the minds of the jurors that defendant was one who was likely to commit drug-related crimes and had done so in the past without punishment.

The State, however, argues that its cross-examination of defendant was proper impeachment on a matter affecting the defendant's credibility as a witness and cites cases allowing the cross-examination of informant-witnesses for impeachment purposes concerning their habitual drug use. (*People v. Strother,* 53 Ill. 2d 95, 290 N.E.2d 201; *People v. Smith,* 41 Ill. 2d 158, 242 N.E.2d 198; *People v. Duncan,* 113 Ill. App. 2d 410, 252 N.E.2d 7.) While in the cases cited by the State, such cross-examination of informants has been approved as properly going to the credibility of the witnesses, the objection to such cross-examination of defendant here is not that it has no appreciable value but that it has too much. (*People v. Lehman.*) Under the circumstances, the cross-examination of defendant and subsequent closing argument characterizing defendant as a drug user is simply too prejudicial to be permitted. While, as the State asserts, the extent of cross-examination is a matter normally within the sound discretion of the trial court (*People v. Burris,* 49 Ill. 2d 98, 273 N.E.2d 605), the trial court in fact sustained all of defendant's objections to the complained of cross-examination. The State further cites cases in which cross-examination of an accused was permitted concerning prior drug usage. (*People v. McElroy,* 30 Ill. 2d 286, 196 N.E.2d 651; *People v. Dixon,* 22 Ill. 2d 513, 177 N.E.2d 224, *overruled on other grounds in People v. Kurth,* 34 Ill. 2d 387, 216 N.E.2d 154.) In these cases, however, such impeachment was allowed where the defendant himself opened the door to the matter by testimony on direct examination. No such result can be here obtained since defendant's direct testimony had not touched upon his prior drug usage, by way of a denial thereof or otherwise.

■■ In *People v. McMillan,* 130 Ill. App. 2d 663, 264 N.E.2d 554, the defendant, who was convicted of the unlawful sale and possession of narcotic drugs, was cross-examined about his prior use of marijuana. During final arguments the prosecutor then stressed this testimony by characterizing the defendant as an "admitted user of marijuana." In addition, other acts of criminal misconduct by a co-defendant were presented by the prosecution which by inference were connected to the defendant. The court found such evidence improper and constituting plain error requiring a new trial although the issue had not been properly preserved. (See also *People v. Meid,* 130 Ill. App. 2d 482, 264 N.E.2d 209.) So too, in the case at bar we find that the total effect of the improper cross-

examination and argument concerning defendant's prior drug usage could only have established a propensity to commit drug related crimes and thus, by improper inference, defendant's guilt of the instant charge. As such we find that defendant was substantially denied his right to a fair and impartial trial.

■■ It is beyond dispute that it was the duty of defense counsel to bring to the trial court's attention by way of a post-trial motion the gross error committed here entitling defendant to a new trial. Defense counsel was bound to exercise a reasonable degree of care, skill and diligence in his representation of defendant. While a review of such representation will not extend to matters involving the exercise of judgment, discretion or trial tactics (*People v. Martin*, 44 Ill. 2d 489, 256 N.E.2d 337), in light of the severity of the error committed here and of the consequences of a failure to file any post-trial motion, counsel's failure to bring the error to the attention of the trial court and to have properly preserved such error for review cannot be characterized as a mere mistake in judgment but rather amounts to a lack of diligence in the exercise of the duties of defense counsel. Counsel's inaction is all the more unexplainable since he had in fact objected during the improper cross-examination. The State appears to argue that fault must be placed upon defendant's appellate counsel by noting, as the record shows, that trial counsel sought advice from appellate counsel following the trial. However, the conclusions urged by the State that it "must be assumed" that appellate counsel determined that there were no issues requiring a post-trial motion or that the failure to file such a motion was a tactic designed to permit defendant to argue ineffective assistance of counsel, are unsupportable. In any event, the duty of trial counsel to represent defendant did not end upon the return of a jury verdict. While the record shows that defendant's trial counsel vigorously and competently represented defendant throughout the trial itself, his utter failure to assert the right of defendant to a new trial following a trial where plain and grievous error was committed amounted to no representation at all in this regard.

Accordingly, for the foregoing reasons we reverse the judgment entered by the circuit court of Madison County and remand this cause for a new trial.

Reversed and remanded for a new trial.

CARTER and G. J. MORAN, JJ., concur.